## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Bruce G. Murphy

v.

City of Virginia Beach, etc.

July 9, 1984

Case No. (Chancery) CH-5220

By JUDGE AUSTIN E. OWEN

This matter came before the Court on May 11, 1984, to be heard upon the Demurrer filed on behalf of the City of Virginia Beach, and upon the Demurrer, Motion to Dismiss and Special Plea of Gay Vacationer Associates, Intervening Defendant.

On May 11, 1984, Mr. Caton filed on behalf of plaintiff a memorandum entitled *Plaintiff's Response To Intervening Responsive Pleadings of Gay Vacation Associates*; and Mr. Wright filed on behalf of Gay Vacationer Associates a *Memorandum of Gay Vacationer Associates*. Thereafter, and on May 16, 1984, Mr. Caton filed *Plaintiff's Reply Memorandum*. Mr. Wright further filed a *Trial Memorandum of Gay Vacationer Associates*, and submitted a letter under date of May 23, 1984, citing further authorities and arguments.

Additionally, on May 11, 1984, witnesses were called, exhibits filed and oral argument of counsel considered. At the conclusion of the arguments of counsel, the Court took the matters under advisement.

The pleadings and the evidence reflect that on July 5, 1983, the Council of the City of Virginia Beach following a public hearing and consistent with the recommenda-

tions of viewers appointed theretofore and recommendations of the City Planning Commission, adopted an ordinance closing the easternmost 150 feet of 34th Street, from Atlantic Avenue to Atlantic Boulevard or Oceanfront. The closing was upon certain conditions, including the dedication by Gay Vacationer Associates of an equal width and depth immediately adjacent thereto and the construction by Gay Vacationer Associates of a replacement street on the dedicated property.

Appearing at the hearing before City Council on July 5, 1983, to oppose the street closing/relocation application, amongst others, were:

(a) *Thomas Snyder*, Attorney at Law, on behalf of the owners of the Mayflower Apartment Building (a 14 story, 271 unit apartment building) located on the northeast corner of 34th Street at its intersection with Pacific Avenue, and on behalf of the residents of that building. Pacific Avenue runs parallel with and is one block west of Atlantic Avenue; Atlantic Avenue runs parallel with and is one block west of Atlantic Boulevard or Oceanfront.

(b) *Edward T. Caton*, Attorney at Law, on behalf of Steve Baugh, owner of property on which he was then constructing an office building. His property is on the westerly side of 34th Street and is separated by an unimproved parcel of land from the northwesterly intersection of 34th Street and Pacific Avenue. The plaintiff testified on May 11, 1984, that he requested Mr. Baugh to appear before City Council and/or the City Planning Commission to oppose the street closing/relocation application. The plaintiff also testified that in February, 1983, he contracted with Baugh to purchase a condominium office space in the building to be constructed on 34th Street and that closing was held in December, 1983.

(c) *Bruce G. Murphy*, Attorney at Law, on behalf of his own personal interest as a purchaser of the aforesaid office condominium space.

(d) *L. M. Robeson*, on his own behalf.

By a vote of 9-2, City Council approved on July 5, 1983, the closure/relocation of that portion of 34th Street between Atlantic Avenue and Oceanfront subject to five conditions.

On September 6, 1983, *L. M. Robeson* and some 63 other parties filed a Bill of Complaint on the Chancery side of this Court seeking a declaration that the action of City Council taken on July 5, 1983, was void. The

suit was filed on behalf of the 64 plaintiffs by Bruce G. Murphy, Attorney, but neither he, nor Steve Baugh nor Thomas Ammons (hereinafter more fully identified) were named as parties plaintiff.

The parties plaintiff were determined as the result of petitions prepared by Bruce G. Murphy acting "on his own" and "not at the request of anyone." One or more petitions were carried around by L. M. Robeson and another was posted in the lobby of the Mayflower Apartments "for signature of those entering." The latter petition was posted by Murphy or one of his employees, and Thomas Snyder who had represented these residents before City Council was not contacted or advised of this action. The petition authorized "the law firm of Bruce G. Murphy, P.C., to appeal said action of the City Council to the Virginia Beach Circuit Court for review *in our names at no expense to us.*" (Italics added.) Murphy did not notify the plaintiffs of the filing of the suit with the possible exception of L. M. Robeson.

According to the testimony of plaintiff, Bruce G. Murphy, *Thomas Ammons* (an attorney at law who had also contracted to purchase a condominium unit in the building being constructed by Steve Baugh) agreed to pay him up to $300.00 and Steve Baugh agreed to pay him up to $1500.00 for his services in bringing and prosecuting the suit in the names of Robeson, et al.; and, in fact, Ammons had paid him $300.00 and Baugh had credited him $1500.00 on the price of his condominium at closing. Murphy "advanced" the costs and has never accounted to Ammons or Baugh or anyone else concerning fees or costs but provided Ammons with "a copy of the ledger." Murphy identified Ammons as the same Thomas Ammons who serves as a member of the City Planning Commission, which Commission had recommended that City Council act favorably on the application for closure/relocation of that portion of 34th Street; and as the same Tom Ammons, identified in a supplemental response to Interrogatories, who would testify as an expert witness in the *Robeson* suit concerning title to the properties of plaintiffs and Gay Vacationer Associates, to the rights of plaintiffs to use streets and alleys and to the opinion that plaintiffs possessed a right of view along 34th Street.

Plaintiff, Bruce G. Murphy, further testified on May 11, 1984, that when, in the Robeson suit, the Court directed that each plaintiff should respond individually

to the interrogatories propounded or suffer dismissal as party plaintiff, he did not write to the plaintiffs or personally contact the plaintiffs to so advise them, although their addresses appeared on the petitions prepared by him; but only posted a notice in the Mayflower Apartments concerning the need to respond and asked L. M. Robeson to circulate a similar notice to others. Only seven of the 64 plaintiffs responded to Interrogatories and by order of January 5, 1984, all but 5 plaintiffs were dismissed with prejudice (two at their request).

On December 21, 1983, Gay Vacationer Associates filed a Motion For Judgment in this Court against the seven plaintiffs who did respond to Interrogatories seeking $500,000.00 in compensatory damages and $1,500,000.00 in punitive damages "for barratry, champerty and maintenance, for malicious use and abuse of process, and for slander of title." By "Final Dismissed Agreed Order" endorsed by Bruce G. Murphy, p.d., and by Grover C. Wright, Jr., p.q., entered in this Court on January 27, 1984, that action was terminated. The decree referred to the agreement of the parties to dismiss the Robeson chancery action, with prejudice, *and not to reinstitute any proceeding against the City or the defendant arising out of the closure of 34th Street.*

Likewise, by "Final Decree Dismissing Cause Agreed With Prejudice" entered on January 31, 1984, endorsed by Bruce G. Murphy, p.q., and by R. J. Nutter, II, Assistant City Attorney, p.d., and by Grover C. Wright, Jr., p.d., the Robeson suit was terminated. The decree referred to the agreement of the parties to dismiss the Gay Vacationer suit "on condition that this suit against the defendants be dismissed."

This action, in which Bruce G. Murphy is the sole plaintiff, was filed on January 27, 1984, by Edward T. Caton, Attorney, and was served on the sole defendant, the City of Virginia Beach, on January 31, 1984. On February 16, 1984, Gay Vacationer Associates was allowed to intervene as a defendant without objection. This suit, filed on the Chancery side of the Court, as was the Robeson suit, likewise seeks to have this Court declare void the action of the Virginia Beach City Council on July 5, 1983, with respect to the closure/relocation of a portion of 34th Street.

On February 2, 1984, Gay Vacationer Associates filed notices in both the Robeson chancery suit and in its

own law action that it would on February 10, 1984, move the Court to vacate the dismissed agreed orders on the grounds of bad faith on the part of counsel, Bruce G. Murphy. These hearings were continued to February 17, 1984, and on February 14, 1984, the City of Virginia Beach gave notice that it would move to vacate the dismissed agreed order in the Robeson suit on the same grounds.

After considering the arguments of counsel on February 17, 1984, the Court advised counsel that inasmuch as there was no indication that Robeson, et al., were involved in or knew of Murphy's plan to institute the new action, it would appear that the proper procedure would be to seek relief in the new suit (this suit) rather than to vacate the dismissed agreed orders.

With the foregoing background we consider the Demurrer filed on behalf of the City of Virginia Beach. The first three grounds are overruled on the basis that the Petition for Declaratory Judgment does assert an actual controversy as to the validity of an ordinance, and establishes equitable jurisdiction. Ground four, laches, if appropriately raised on demurrer, is overruled as it is not established by the Petition itself. Grounds five, six and seven, res adjudicata, collateral estoppel and estoppel by conduct are related and will be addressed with respect to the Special Pleas of Gay Vacationer Associates by which they are more properly presented for consideration.

Turning next to the Demurrer and Motion to Dismiss and Special Plea filed on behalf of Gay Vacationer Associates, we find the grounds therefor so intermixed as to make separation of the grounds stated solely in support of the Demurrer virtually impossible to distinguish.

Basically, plaintiff has alleged, first, that the action of the City in vacating a portion of 34th Street was undertaken for the sole private benefit of Gay Vacationer Associates; and, secondly, that plaintiff has a vested interest in the use of 34th Street as it now exists for ingress, egress, light, view and air. In support of its first allegation plaintiff in both oral and written argument relies upon the opinion in *City of Lynchburg* v. *Peters*, 145 Va. 1 (1926).

In the *Peters* case the Court did say, at page 13:

It is, of course, true, generally speaking, that streets can only be closed, in the exercise

of judgment and discretion of the City Council, for the public welfare.

That same paragraph, and then succeeding paragraphs go on to state, however:

> They cannot be *obstructed or partially or temporarily closed for the benefit of private interests. Chambers v. Roanoke, supra; Richmond v. Smith, supra.* . . .
>
> When the power to vacate or close streets has been delegated to a municipality, in the absence of a showing that the closure was for *solely* private benefit, or that it was the result of collusion or fraud, it is the exercise of a political or legislative function which the Courts will not review.

Other portions of the *Peters* opinion and the opinions in the cases of *Chambers v. Roanoke*, 111 Va. 254 (1910), and *Richmond v. Smith*, 101 Va. 161 (1903), cited therein as authority, clearly distinguish the situation where a street is vacated from that where a street is obstructed or temporarily closed.

> The City Council of Lynchburg could not use, or permit to be used, the streets of the City for private or public purposes, other than as streets; *but once a street is lawfully closed,* it is no longer a street, and the City may use the vacated area for any public purpose to which it may be legally dedicated. *Peters* at page 21.

Respecting plaintiff's second allegation, the decision in the case of *Shield v. Peninsula*, 147 Va. 736, 748 (1926), would seem to establish that plaintiff, whose condominium office space is separated by an unimproved parcel, a major thoroughfare, a complete block, and a second major thoroughfare from the nearest portion of the section of 34th Street which was closed, has no rights of light, air and view in that section of street:

> A great deal of the argument. . . was directed. . . [to]. . . plaintiff's claim that the

intended building would obstruct the right of light, air and view of the river from his lots facing on Water Street. *It is true that the servitudes of the civil law in these respects are not recognized in the doctrine of easements as expounded in this Country.* . . . . An owner of property abutting upon a street has a right to complain of a structure placed in the public highway in front of his property, and may state as one of his grounds of complaint that the unlawful obstruction interferes with the freedom of light and air above but within the lines of the highway. 37 Cyc. 206; 13 R.C.L. 142.

A Demurrer admits the truth of the matters properly alleged, and plaintiff has alleged that the street was vacated for the *sole private benefit* of Gay Vacationer Associates, and has alleged a *vested interest* (presumably a need) for the use of the vacated portion of 34th Street for ingress and egress. For these reasons the Demurrer is overruled.

The issue of the applicability of the doctrine of *res adjudicata* and/or *collateral estoppel* is most extensively argued and in the Court's view is decisive of this cause.

In his testimony on May 11, 1984, the plaintiff, Murphy, conceded that all of the plaintiffs in the Robeson suit had interests similar to his, but he contends not exactly the same. He stated as his reason for not naming himself as a plaintiff in the Robeson suit the fact that he did not want to get personally involved. His counsel, in oral argument conceded that Murphy's interest was represented in the Robeson suit. The contention is, however, that no plaintiff in the Robeson suit was an owner with an ocean view through their windows (as distinguished from owners with no ocean view through their windows, and from renters both with and without an ocean view from their windows). The apparent contention is that only Murphy, Ammons, and developer Baugh fall into the owner with an ocean view category. Interestingly, these three constitute the only persons who instigated, paid for and completely controlled the institution and conduct of the Robeson suit. To contend now that their interests were not represented in that suit is absurd.

In *Bates* v. *Devers*, 214 Va. 667 (1974), the Virginia Supreme Court noted that *res judicata* is a judicially-created doctrine resting upon considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties. In its *Memorandum* filed herein on May 11, 1984, Gay Vacationer Associates cites a number of Virginia decisions holding that the dismissal of a suit by agreement is a final determination as to those parties of the matters litigated in that suit. Additionally, in the present instance, the agreed order entered in Law No. LA-16,128 reflects that the defendants (L. M. Robeson, et al.) "agree to dismiss their suit against the City of Virginia Beach and Gay Vacationer Associates now pending in this Court, In Chancery No. CH-4091, with prejudice, *and not to reinstitute any proceeding against the City. . . arising out of the closure of 34th Street east of Atlantic Avenue in the City of Virginia Beach, Virginia.*" That order was endorsed "seen and agreed to" by Bruce G. Murphy, p.d.

The law is settled that a judgment is conclusive not only upon those who were actually parties to the litigation, but also upon all persons who are in privity with them. See, e.g., *Storm* v. *Nationwide*, 199 Va. 130 (1957). And one who has such a mutual identification in interest with another as to represent the same legal rights is in privity with that other person. *Kessler* v. *Fentress*, 223 Va. 14 (1982).

In the case of *Patterson* v. *Saunders*, 194 Va. 607, 74 S.E.2d 204, 209 (1953), the Court said:

> In Wright v. Wright, 164 Va. 245, 178 S.E. 884, we quoted, with approval, the following from *Souffront* v. *La Compagnie des Sucreries*, 217 U.S. 475, 30 S.Ct. 608, 612, 54 L.Ed. 846:
> The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, and as fully entitled to avail himself of it, as an estoppel against

an adversary party, as he would be if he had been a party to the record.

Clearly, the plaintiff Murphy (who sought out the plaintiffs in the *Robeson* suit, prepared and filed the suit without first showing the same to the plaintiffs (with the possible exception of one of the sixty-four), advanced the costs, arranged with non-parties for his fee, permitted most plaintiffs to be dismissed without direct contact concerning their rights; who had previously appeared in his own behalf before the City Council concerning the same matter) was prosecuting the suit in the names of others in an attempt to establish his own right; and not only assisted in but directed and controlled the prosecution of the suit in aid of his own interest; and his personal interest was fully known to the City and to Gay Vacationer Associates who were also represented before the City Council when Murphy appeared there.

Murphy, then, is bound by the final determination in the *Robeson* action. He contends, however, that to so rule would be inequitable in that Robeson, et al., agreed to the dismissal only because of the large damages sought to be recovered against them in the law action brought by Gay Vacationer Associates. He contends that had he been a named plaintiff in the Robeson action he would not have been similarly intimidated. The answer to that argument is that it was Murphy who, trained in the law, decided not to include himself as a party plaintiff; who, thereafter, failed at any time to seek to be added as a party plaintiff; who negotiated the mutual agreements to dismiss the two actions, *with prejudice*, and without any attempt to reserve unto himself a right to reinstitute a like claim; and who endorsed both orders of dismissal including the express agreement barring any subsequent action against the City. It was Murphy, also, who, by his own testimony, had retained Caton "somewhere about January 9 or January 10 or one week thereafter" to institute this suit, but who never disclosed to counsel for the City or to counsel for Gay Vacationer Associates any intention to file a suit in his own name while he negotiated, in presumed good faith, the mutual dismissal of the pending actions. His conduct lends no support to his appeal to equity for exclusion from the estoppel arising from the final determination in the *Robeson* suit of the very issues sought to be raised in this suit.

Mr. Wright is requested to draft a decree dismissing this suit.