# Richmond

LOULA BELLE WRIGHT V. JOHN TALLEY WRIGHT.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*Thomas I. Talley,* for the appellant.

*McCue & McCue,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The appellant, Loula Belle Wright, filed her bill of complaint against the appellee, John Talley Wright, in which she alleges that they were married in Amherst, Virginia, on the 21st day of July, 1898; that ever since their marriage they had resided in Virginia; that seven children were born of this union and at the date of the filing of the bill all of them were adults; that in March, 1926, the appellee left her and her children in Richmond, where they were then

residing, and went to Charlottesville to obtain work; that on the 24th day of December, 1926, appellee came to Richmond to be with his family for the Christmas holidays, but on Christmas day he became very angry with her because she would not give her consent to one of the daughters accompanying him back to Charlottesville, and on that day, without justification or excuse, left appellant and stated that he never intended to return and live with her, and has not since that date resumed marital relations with appellant, though he had often been requested to do so; that in 1927 appellee went to the State of Nevada and instituted divorce proceedings against appellant but abandoned the suit when appellant employed counsel to contest the suit; that in 1930 appellee filed his bill of complaint against appellant in the Circuit Court of the city of Richmond, seeking a divorce; that a hearing was had, but the court, indicating the proof was insufficient to sustain the allegations of the bill, permitted appellee, with the consent of appellant, to dismiss the bill without prejudice; that during the first week of January, 1931, appellee went to Reno, Nevada, and after residing there for the period of three months required in that State, instituted a suit for divorce against appellant, on the ground of cruelty; that upon the false and uncorroborated testimony of appellee, a divorce was granted him; that on the 5th day of July, 1931, appellee was married in the city of Washington to Julia Travers Woolfolk; that the appellee has been guilty of adultery and desertion; and that the Nevada divorce was obtained by fraud.

The prayer of the bill is for temporary and permanent alimony and for a severance of the bonds of matrimony. While the bill attacks the validity of the Nevada decree, appellant admits that she employed counsel to contest the case, but that: "For some unexplained reason the attorney to whom the said power of attorney was given, never notified your complainant of the institution of said suit and he did not contest same but appeared and waived notice."

Though cognizant of the fact that appellee had obtained a divorce in Nevada and had re-married, appellant took no

action to vacate and annul the decree, but on the 25th day of March, 1932, she instituted proceedings against appellee in the Juvenile and Domestic Relations Court of Richmond, charging non-support.

Appellee appeared at the hearing, pleaded the Nevada divorce as a defense to the proceedings, and testified in his own behalf. The court before whom the proceedings were had, held, in effect, that the divorce decree was a nullity, and thereupon the appellee was ordered to pay appellant the sum of $50 per month.

From that judgment appellee appealed to the Hustings Court of the city of Richmond. The proceedings upon and the result of the appeal are shown by the following order, dated June 13, 1932: "The said defendant this day appeared and was set to the bar in the custody of the sergeant of this city, and being arraigned of the offense of non-support, as charged in the warrant issued against him by the judge of the juvenile and domestic relations court of this city, tendered to the court his special plea in bar, alleging that he had been duly divorced from the said Loula B. Wright, and filed a copy of the decree of divorce in support of his said plea; to which plea the attorney for the Commonwealth replied and tendered to the court his replication to said special plea, in which replication it is alleged that the said divorce was obtained by the defendant without his having obtained a *bona fide* residence in Nevada. The defendant then moved the court to reject the said replication upon the ground that the said divorce decree is final and binding and cannot be attacked in this court; and the court having inspected said plea and the copy of the decree of divorce as well as the replication to the said plea in bar, and having heard the arguments of counsel, is of opinion and doth decide that the attorney for the Commonwealth has the right to introduce evidence on the question of fact alleged in his replication, namely, that the defendant has not obtained a *bona fide* residence of three months in Nevada before his suit for a divorce was instituted. And the court having heard the evidence on this alleged fact, doth dis-

miss the replication filed by the attorney for the Commonwealth and doth sustain the defendant special plea in bar and doth order this case dismissed."

After a waiting period of about five months, appellant filed her bill of complaint embodying the allegations heretofore set forth.

On the 12th day of December, 1932, appellee filed the following plea: "The said defendant, by his attorneys, comes and says that, the plaintiff, Loula Belle Wright, ought not to have or maintain her motion against him for support money and attorney's fee and her suit for a divorce because the said plaintiff did heretofore on the 25th day of March, 1932, institute proceedings against the defendant, alleging his non-support under sections 1936, 1937 of the Code of Virginia, by a petition duly sworn to by her, that the judge of the Juvenile and Domestic Relations Court of the city of Richmond, issued a warrant against the defendant based upon said petition. A certified copy of said petition and warrant is herewith tendered as a part of this plea. That on an appeal from the decision of the said Juvenile and Domestic Relations Court to the Hustings Court of the city of Richmond, a court of record on June 13, 1932, the said defendant pled a special plea in bar of the prosecution setting up a certified copy of the record of the divorce from plaintiff in the State of Nevada and after evidence was heard by the court, the plea was sustained and the case against the defendant dismissed; a certified copy of said judgment is also herewith tendered as a part of this plea. That the dismissal of said prosecution is *res adjudicata* to the motion and suit for divorce now pending in this court. That the plaintiff is estopped to further prosecute her said motion and suit for divorce and that the same constitutes a collateral attack on the aforesaid judgment.

"By reason whereof the said motion and suit for divorce now pending against the defendant should be dismissed, and this the said defendant is ready to verify."

The questions were disposed of by the chancellor in the following decree: "This cause came on this day to be heard

upon plaintiff's motion for temporary support money and counsel fees, and upon the plaintiff's bill for divorce; upon the defendant's plea of *res adjudicata* to both the motion and bill for divorce; and with said plea the defendant filed a certified copy of the judgment of the Hustings Court of the city of Richmond, Virginia, rendered at its June term, 1932, wherein it was adjudged that the divorce decree heretofore rendered in favor of the defendant, John T. Wright, against Loula Belle Wright, in the State of Nevada, was valid; upon the plaintiff's general replication and motion to reject the defendant's plea and upon argument of counsel on the part of the plaintiff and defendant.

"Upon consideration whereof, and it appearing to the court that it has heretofore been adjudged, that the defendant has been duly divorced from the said plaintiff in the State of Nevada and that the Hustings Court of the city of Richmond, Virginia, having at its June term of 1932 dismissed the proceedings which were instituted by Loula Belle Wright against the defendant, and that the court is of the opinion that the plaintiff is not entitled to temporary alimony and attorney's fees, nor the divorce prayed for in her bill and that the defendant's plea of *res adjudicata* to said motion and bill for divorce should be sustained; it is therefore adjudged, ordered and decreed that the plaintiff's motion for temporary alimony and counsel fees and her bill for divorce are hereby dismissed.

"And it is further ordered that the said Loula Belle Wright shall pay unto the said John T. Wright the costs by him in this behalf expended and nothing further remaining to be done in this cause, it is ordered that the same be stricken from the docket."

From that decree this appeal was allowed.

There are two assignments of error, as follows:

"1. The court erred in overruling by the decree of December 15, 1933, petitioner's motion to reject the defendant's plea in bar, and in sustaining the defendant's plea of *res adjudicata* and dismissing the cause.

"2. The court erred in ordering by said decree that peti-

tioner pay to the defendant his costs expended in these proceedings."

The first assignment of error is based principally upon the contention that in a criminal prosecution an acquittal cannot be pleaded in bar of a subsequent civil proceeding based upon the same facts.

In order to determine the legal rights of the wife who had been deserted by the husband, it is necessary to compare the remedies provided by statute for her relief.

Under the provisions of chapter 80 of the Code, a wife may file her petition alleging that her husband had, without just cause, deserted and wilfully neglected and refused to provide for her support, etc. Thereupon, a warrant shall issue against the said husband. If, upon the trial, he is found guilty, he may be punished for a misdemeanor, as provided by section 1936 of the Code, or in the discretion of the juvenile and domestic relations court, an order may be entered directing the defendant to pay a certain sum periodically for the support of the wife, under the provisions of section 1939. In the event of the defendant's failure to pay the amount directed, he may be punished for contempt.

While in a technical sense the provisions of the Code under chapter 80 may be criminal in form, in their practical effect they are compensatory provisions and analogous to section 5107 of the Code, which provides for the maintenance of the wife during the pendency of a suit for divorce. Under the provisions of both chapters of the Code, the court may direct payments to be made to the wife at stated periods and may punish as for contempt upon failure so to do.

It is thus seen that the wife has been afforded two distinct methods of compelling the delinquent husband to provide for her support and maintenance. Having been afforded a choice of remedies, the wife must elect which remedy she will pursue, as it is inconceivable that the legislature intended that she should have the right to pursue both remedies and thus make the husband pay twice for one delinquency. Appellant having made her election and hav-

ing failed, in the hustings court, in her attack upon the judgment of the Nevada court, should she now by filing a suit for divorce be permitted to raise the question of her marital status?

That the appellant has had her day in court upon the question of appellee's *bona fide* residence in Nevada seems concluded by the judgment of the hustings court: "And the court having heard the evidence on this alleged fact (*bona fide* residence of three months in Nevada) doth dismiss the replication filed by the attorney for the Commonwealth and doth sustain the defendant's special plea in bar and doth order this case dismissed."

It is apparent, therefore, that the issue is narrowed down to the single point, viz: Did the circuit court err in sustaining appellee's plea of *res judicata?*

To sustain said plea, it is necessary to show that the parties are the same, that the issue is the same and that the issue has been decided on its merits by a court of competent jurisdiction. The only question pertinent is, were the parties the same? In our opinion, under the facts in the case, the question must be answered in the affirmative.

In the *City of Richmond* v. *Davis,* 135 Va. 319, 116 S. E. 492, 493, the facts sufficiently appear in the opinion of the court, speaking through Burks, J., who said: "The question at issue, both in the proceedings before the police justice and in the case in judgment, was the right of the military board to erect the buildings contrary to the provision of the city ordinance. This issue was decided on its merits by a court of competent jurisdiction, and final judgment was entered against the city. The only question about which any doubt could arise, to bring the case within the rule stated above, is, Were the parties the same? It is conceded by the city that the 'Military Board of Virginia * * * proceeded to erect within the prescribed district four wooden warehouses * * * and thereupon the city caused to be summoned to the police court, R. M. Dashiell, the foreman on the work,' who defended on the ground that he was causing the erection of the buildings mentioned pursuant

to instructions given him by the military board of the State, and hence could not be interfered with or controlled by the city. The police justice fined Dashiell, but on appeal that judgment was reversed by the hustings court, on the ground that the acts of Dashiell had been authorized by the military board, and were, therefore, acts of the State of Virginia. Dashiell had no personal interest in the matter, and defended solely on the ground of authorization by the military board, and this defense was sustained on the ground that the military board was not subject to the jurisdiction of the court. Was the military board so far a party or privy to that proceeding as to preclude the city from maintaining the present suit? We think it was. The sole object of both proceedings was the same."

Judge Burks said further, quoting from 15 R. C. L. 1010, etc.: " 'Similarly, where a suit is prosecuted or defended by one person at the instance of another, and for the latter's benefit, the judgment will be binding and conclusive upon the latter. In all such cases the strict rule that such a judgment operates as *res judicata* only in regard to parties and privies expands to include such persons as parties, or at least as privies.'

"In Freeman on Judgments, section 174, it is said: 'Neither the benefit of judgments on the one side nor the obligations on the other are limited exclusively to parties and their privies. Or, in other words, there is a numerous and important class of persons who, being neither parties upon the record nor acquirers of interest from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among those are persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person.'

"In Herman on Estoppel, sections 150, 152, it is said: 'One who is benefited by the prosecution of an action of which he has notice is to be regarded as a party in interest, although his name does not appear therein.

" 'A master or principal is in privity with his servant or agent when the latter defends an action in the right of the

former, and a judgment is an estoppel to a renewal of the principal or master in the suit on the ground that he is considered the real party, and especially when the principal expressly or impliedly authorized or ratified the acts of the agent, virtually rendering him a party to the proceedings instituted by or against the other.

\*  \*  \*  \*  \*  \*  \*  \*

" 'In such cases the technical rule that a judgment can only be admitted between the parties to the record or their privies expands so as to admit it when the same question has been decided and judgment rendered between parties responsible for the acts of others.'

"In 2 Black on Judgments, section 578, it is said: 'So where the plaintiff sues the agent and is defeated, and then sues the principal, the latter may take advantage of the estoppel against the plaintiff.' See also section 579, stating the same doctrine, where the relation is that of master and servant. To the same effect, see Bigelow on Estoppel (5th Ed.), pages 121-2.

\*  \*  \*  \*  \*  \*  \*  \*

"In speaking of the facts of the particular case, it was said in *Souffront* v. *La Compagnie des Sucreries,* 217 U. S. 475, 487, 30 S. Ct. 608, 612, 54 L. Ed. 846: 'The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record. *Lovejoy* v. *Murray,* 3 Wall. 1 [18 L. Ed. 129].' "

In *Eagle, etc., Ins. Co.* v. *Heller,* 149 Va. 82, 140 S. E. 314, 319, 57 A. L. R. 490, the doctrine enunciated seems to us decisive of the question raised in the case at bar.

Heller brought an action on a fire insurance policy on a stock of goods, after he had been convicted under section 4436 of the Code of wilfully burning the same stock of

goods with intent to injure the insurer. Issue was joined upon defendant company's plea of the general issue. Among the grounds of defense filed by the defendant was the one that the fire was not accidental but caused by the plaintiff, Heller, with intent to defraud the defendant, and that the plaintiff had been convicted of burning the property insured with intent to defraud defendant. In addition to the plea of general issue, the defendant filed a plea of *res judicata* which the court struck out, and a plea of *estoppel*, averring the conviction of felony as an estoppel to the maintenance of the action which the trial court rejected. The trial court, by instructions to the jury, held that the evidence of the conviction was irrelevant, immaterial and inadmissible upon the issues raised in the case. On appeal it was held that the trial court erred in rejecting these pleas and in excluding the evidence offered in support of the facts alleged therein. Chief Justice Prentis, speaking for the court, said:

"The vital question—that is, whether or not the plaintiff, Heller, fraudulently destroyed, or connived at the destruction of, his own property for the purpose of securing the insurance—is identical with that which was heard and determined in the criminal prosecution against Heller, and while not *res judicata* as against the insurance company, no sound reason is perceived why the plaintiff, Heller, should be permitted to reopen it and to avoid the legal effect of that judgment by such a collateral attack upon it. It is clear that if he can succeed in this action, he thereby avoids the logical consequences of his conviction.

"Like other judgments, a judgment in a criminal case cannot be attacked collaterally.

"In *Clark* v. *Atlantic City* (C. C.) 180 Fed. 598, it is held that where one is found guilty and fined for a violation of a municipal ordinance, the judgment, so long as it remains undisturbed, is conclusive upon the accused, and he cannot recover the amount of the fine upon the ground that the ordinance is void as affecting interstate commerce.

\* \* \* \* \* \* \* \*

"In this case the accused seeks to reopen the precise question which was decided in the criminal case, and to avoid the legal consequences of his conviction, and the reason for the rule that judgments of courts of record having jurisdiction cannot be collaterally attacked applies.

"In discussing the effect of judgments as estoppels, Mr. Freeman (Freeman on Judgments, section 641) has this clear expression: 'In order that an adjudication in one court or tribunal should be regarded as *res judicata* upon the matters thereby determined when they come again in question in another tribunal, it is obviously not necessary that the same rules of law, practice or evidence should prevail in both tribunals. The attempt to impose any such limitation would defeat the whole purpose of the rule. As we have elsewhere shown, the basis of the doctrine is the policy and necessity of preventing continuous litigation over the same matter to the great vexation of the parties, and the obstruction of the judicial machinery, and not the assumption that the judgment is a legally or ethically correct determination of the rights of the parties. All that is essential, therefore, is that a party should have been given one opportunity for the judicial determination of an issue by a tribunal having the requisite authority and proceeding in a manner recognized as due process of law.'

"There seems to us no doubt that this is in effect a collateral attack upon the former judgment.

"In Van Fleet on Collateral Attack, section 3, the distinction between a direct and a collateral attack is thus clearly drawn: 'Any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack which will be successful only upon showing a want of power.'

"While the judgment in the criminal case is not *res judicata* as to the company, and while it does not operate technically as an estoppel on the plaintiff, because of lack of mutuality, the insurance company not being a party there-

to, nevertheless, lest the reasons for the rule be overlooked, it should be remembered that the plaintiff in error, Heller, was a party to the criminal case; that he there had the fullest opportunity to make all of his defenses; that the identical question which he has reopened in this case was solemnly adjudicated in that case; and that it was there found beyond a reasonable doubt that he had burned his property for the purpose of collecting the insurance from this insurance company. Therefore, he should not be permitted again to raise that question by this collateral attack upon that judgment, and thus to avoid its legal and logical consequences."

There is no merit in the first assignment of error.

The second assignment of error is likewise without merit. Section 5106 (as amended by Acts 1928, chapter 126) provides that in divorce suits "costs may be awarded to either party as equity and justice may require."

The awarding of costs rests in the discretion of the lower court and this court will not interfere unless it appears that the discretion has been abused.

There is no error in the decree of the court below and it will be affirmed.

*Affirmed.*