COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


TONY WILLIAMS
                                                            OPINION BY
v.        Record No. 0904-10-4                    JUDGE ROSSIE D. ALSTON, JR.
                                                            MARCH 22, 2011
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                              J. Martin Bass, Judge

          (John A. Mell; Mell & Frost, on briefs), for appellant.  Appellant
          submitting on briefs.

          Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        Tony Williams (appellant) appeals from his convictions for two counts of misdemeanor

failure to appear, in violation of Code § 19.2-128, and two counts of failure to provide support

for his minor children, in violation of Code § 20-61.  On appeal, appellant alleges that 1) the trial

court erred by failing to properly take notice of its judicial records and the facts regarding the

date and time of appellant's hearing; 2) the evidence is insufficient to support appellant's

conviction for failure to appear, even if the trial court properly took judicial notice of its records

as requested by the Commonwealth; 3) the evidence is insufficient to convict appellant of

violating Code § 20-61; 4) the conduct complained of under Code § 20-61 is one continuous

wrongdoing not subject to multiple indictments; and 5) the election of pursuing civil child

support precludes a prosecution for criminal failure to provide child support.  For the reasons that

follow, we affirm in part and reverse in part appellant's convictions.

I.  Background

In 2002, appellant and his wife, Erika Howard, separated.  During their marriage, appellant and Howard had two minor children.  On November 11, 2002, the Stafford County Juvenile & Domestic Relations District Court entered a support order requiring appellant to pay support for his children in the amount of $889 per month, payable in two installments per month. In 2004, appellant and Howard's divorce was finalized.

From September 2004 to September 2005, appellant did not pay any child support for his children.  Howard and the children resided in Stafford County, Virginia, during this time period. Appellant resided out of state.  Howard, who was working four jobs at the time, was forced to seek assistance from her church and a food bank to feed the children.  In addition, foreclosure proceedings were commenced on her home, where the children lived, and her two cars were repossessed.

On September 6, 2005, a grand jury indicted appellant for failing to provide support for his children from September 2004 through September 2005, in violation of Code § 20-61. Appellant was subsequently arrested, and bail was set at $80,000.  However, after appellant paid $5,000 of his past-due child support, he was released on a $20,000 unsecured recognizance bond. The terms of appellant's recognizance bond permitted him to leave the state for work and school. The recognizance bond set the next hearing date for September 20, 2006, and further provided,

> I, the defendant, as a condition of my release from custody, by
> signing this form, promise to appear in court on the date and time
> noted above.  If this date, time or place is changed for any reason
> by any court or judge, I also promise to appear as so directed.

Appellant signed the recognizance bond on September 19, 2006.

On September 20, 2006, appellant appeared before the trial court and asked the court for a continuance so he could hire an attorney.  The trial court continued the case to November 17, 2006.  The order by which the court memorialized the continuance states, "Whereupon, the

- 2 -

Court recognized the defendant to appear before this Court on November 17, 2006[,] at 9:00 a.m. for arraignment and for a bench trial and should he fail to appear, he will be indebted to the Commonwealth of Virginia in the amount of $10,000.00."

Appellant did not appear before the trial court on November 17, 2006 as required by the September 20, 2006 order. Subsequently, the trial court made an oral ruling setting a new trial date of December 5, 2006. However, the court did not enter the written order memorializing this action until December 5, 2006. On December 5, 2006, appellant again did not appear, and a capias was issued for revocation of his bond.

Meanwhile, after paying $5,000 toward his past due child support upon his release on the recognizance bond, appellant again stopped paying child support. Howard did not receive any further child support payments from appellant. From 2006 to 2007, Howard continued to experience "financial difficulties." Howard, who had been making about $30,000 per year, had obtained her real estate license and was able to sell one house in 2006, for which she earned a commission of about $3,000. However, she was still forced to seek assistance from her church and a food bank to feed her children. Moreover, Howard still faced foreclosure on her home.

As a result of appellant's second failure to make child support payments, on January 3, 2007, a grand jury indicted appellant for failing to support his children from February 1, 2006, through January 3, 2007, in violation of Code § 20-61. The grand jury also indicted appellant for failure to appear on November 17, 2006, and December 5, 2006, in violation of Code § 19.2-128(B).

On January 14, 2010, appellant was arrested. He was tried for misdemeanor failure to appear and misdemeanor failure to provide support for his minor children on March 5, 2010. At the time of trial, appellant owed Howard approximately $91,000 in child support.

At trial, the Commonwealth asked the trial court to take notice of records regarding appellant's failure to appear. The Commonwealth stated,

> Your Honor, I'm going to ask the Court to take note of its own records. . . .
> . . . There are several documents that I'm going to ask the Court to take note of.
> Judge, the first two orders I'm going to ask the Court to take note of are . . . in the Court's file. One signed December 5th, 2006; but that was for a hearing on November 17th, 2006, indicating the defendant's failure to appear. And the other, for a hearing on December 5th, 2006, signed December 11th, 2006, once again indicating the defendant failed to appear.
> And also, that -- that order from December 5th, also recites that . . . once again, the defendant failed to appear on November 17th.
> So, I'm going to ask the Court to take note of those two orders.

After the trial court marked the documents specified by the Commonwealth, the Commonwealth stated,

> There's one other document in the file . . . that I'd like for the Court to consider.
> Judge, the other document is the recognizance, indicating the defendant was arrested on a misdemeanor offense and appeared before . . . the Court. . . .

The trial then continued with no further requests to take notice of documents in the record.

Appellant was convicted of two counts of misdemeanor failure to appear, in violation of Code § 19.2-128(C),[1] and two counts of failure to provide support for his minor children, in violation of Code § 20-61. This appeal followed.

---

[1] On appeal, appellant does not challenge the variance between his indictment under Code § 19.2-128(B) and conviction under Code § 19.2-128(C).

II.  Analysis

A.  Judicial Notice

On appeal, appellant contends that the trial court erred in failing to properly take notice of its judicial records and the facts regarding the date and time of appellant's hearing.  Appellant argues that the trial court was asked to take judicial notice not of its entire file regarding appellant's failure to appear, but only the specific documents mentioned by the Commonwealth, and thus the trial court erred in taking judicial notice of the entire record.  Furthermore, appellant argues that the trial court failed to specify the facts it was noticing.

Judicial notice "is a rule of necessity and public policy in the expedition of trials." Williams v. Commonwealth, 190 Va. 280, 291, 56 S.E.2d 537, 542 (1949).  It is "a short cut to avoid the necessity for the formal introduction of evidence in certain cases where there is no need for such evidence . . . .  It relieves the party from offering evidence because the matter is one which the judge either knows or can easily discover."  Id.  "'The fact of judicial notice must appear from the record.'"  Thomas v. Commonwealth, 36 Va. App. 326, 332, 549 S.E.2d 648, 651 (2001) (quoting Sutherland v. Commonwealth, 6 Va. App. 378, 383, 368 S.E.2d 295, 298 (1988)).  Although

> "a trial court need not intone the words 'judicial notice' in order to notice a fact, the evidence, the arguments of the parties and the statements of the trial court must demonstrate clearly that the trial court has taken judicial notice of [a] fact before a party may rely upon such notice on appeal."

Edmonds v. Commonwealth, 43 Va. App. 197, 201, 597 S.E.2d 210, 212 (2004) (quoting Dillard v. Commonwealth, 28 Va. App. 340, 347, 504 S.E.2d 411, 414 (1998)) (emphasis omitted).

In this case, the statements of the trial court and the evidence and arguments of the parties demonstrated that the trial court had taken judicial notice of court orders regarding appellant's September 19, 2006 recognizance to appear; appearance on the first trial date, September 20,

- 5 -

2006; request on September 20, 2006, for a continuance to obtain an attorney; subsequent recognizance by the Court for a November 17, 2006 trial date; and failure to appear on November 17, 2006. In asking the trial court to take notice of its records regarding appellant's failure to appear, the Commonwealth specifically asked the trial court to "take note of its own records." The fact that the Commonwealth also directed the trial court to specific files within the records to draw its attention to those files does not negate its initial request that the trial court take note of all of the records generally.

Furthermore, the trial court stated twice that it was taking notice of the entire record. First, the trial court stated, "In reviewing *all* of the orders, which the Court was asked to do, [to] take notice of its records . . ." and "[T]he Court was asked to reflect upon *all* the records in the file." (Emphases added). Second, the trial court later stated, "[T]he Court was being asked to take notice of the records in the file, and the Commonwealth's Attorney was specifically referring to two orders that demonstrated on those dates [appellant] had not been here." Moreover, the trial court stated specifically what facts it was noticing from those records when it said,

> In reviewing *all* of the orders, which the Court was asked to do, [to] take notice of its records, it's clear that [appellant] was not only given a recognizance to appear, but that he did appear on the first date and was then recognized by the Court, himself, for the first trial date of November 17th. That order again reflects that he was not there. The second order reflects that he was not there. And it recites, not only was he not there December 5, he was not there on . . . November 17th.

(Emphasis added).

In light of these statements from the Commonwealth and the trial court, we find that the trial court reasonably concluded that: 1) the Commonwealth requested it take judicial notice of the *entire* record regarding appellant's failure to appear; 2) the trial court took such notice; and 3) the statements of the trial court, more specifically the facts recited by the trial court in

- 6 -

rendering its decision, and the evidence and arguments of the parties demonstrated clearly that the court was taking note of its entire record. Thus, we hold that the trial court did not err in taking notice of its judicial records and the facts regarding the date and time of appellant's scheduled hearings.

## B. Sufficiency of the Evidence

Appellant argues that, even if the trial court took proper judicial notice of its records, the evidence was insufficient to support appellant's convictions for failure to appear. In addition, appellant argues that the evidence was insufficient to support his convictions for failure to support his children.

### 1. Standard of Review

"'When a defendant challenges the sufficiency of the evidence on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.'" Molina v. Commonwealth, 272 Va. 666, 675, 636 S.E.2d 470, 475 (2006) (quoting Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002)). "'In so doing we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (*en banc*) (quoting Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986)) (internal quotation marks omitted). The Court "'will not disturb the fact finder's verdict unless it is plainly wrong or without evidence to support it.'" Molina, 272 Va. at 675-76, 636 S.E.2d at 475 (quoting Ward, 264 Va. at 654, 570 S.E.2d at 831).

### 2. Failure to Appear

Code § 19.2-128(C) provides:

> Any person (i) charged with a misdemeanor offense or
> (ii) convicted of a misdemeanor offense and execution of sentence

is suspended pursuant to § 19.2-319 who willfully fails to appear before any court as required shall be guilty of a Class 1 misdemeanor.

Thus, to support appellant's conviction for failure to appear, the Commonwealth was required to prove that appellant "willfully" failed to appear at trial. Hunter v. Commonwealth, 15 Va. App. 717, 721-22, 427 S.E.2d 197, 200 (1993) (*en banc*). "'Willfully,' as used in Code § 19.2-128(B), has the customary meaning that the act must have been done 'purposely, intentionally, or designedly.'" Id. at 721, 427 S.E.2d at 200. "'Any failure to appear after notice of the appearance date [is] prima facie evidence that such failure to appear [was] willful.'" Id. (quoting Trice v. United States, 525 A.2d 176, 179 (D.C. 1987)) (alterations in original). As a result, "[w]hen the government proves that an accused received timely notice of when and where to appear for trial and thereafter does not appear on the date or place specified, the fact finder may infer that the failure to appear was willful." Id.

The Commonwealth concedes on brief and at oral argument that the evidence was insufficient to show that appellant's failure to appear on December 5, 2006 was willful, because the evidence was insufficient to show that appellant had notice of the order to appear on December 5, 2006. Although the trial court had made an oral ruling setting a new trial date of December 5, 2006, it did not enter the written order memorializing this action until December 5, 2006, the actual date on which appellant was required to appear. Thus, we reverse appellant's conviction for failure to appear on December 5, 2006.

However, because we find the evidence sufficient to support appellant's conviction for failure to appear on November 17, 2006, we uphold appellant's conviction for failure to appear on that date. The trial court took judicial notice of all of its records regarding appellant's failure to appear, including a recognizance bond signed by appellant in which he promised to appear on September 20, 2006, and promised that "if this date, time or place is changed for any reason by

- 8 -

any court or judge," he would "appear as so directed"; an order entered by the trial court on September 25, 2006, setting November 17, 2006, as appellant's trial date and ordering appellant to appear; and an order entered by the trial court on December 5, 2006, stating that appellant failed to appear on November 17, 2006.

"An accused who is given notice of the original trial date is charged with notice of those dates to which his or her case is expressly continued when such action is duly recorded in the order of the court." Id. at 722, 427 S.E.2d at 200. The documents that the trial court noticed prove that appellant was given notice of his original trial date, September 20, 2006, by the recognizance bond, which he signed. In addition, the documents noticed by the court establish that the court entered an order on September 25, 2006, continuing appellant's case to November 17, 2006. As a result, appellant is charged with notice of his November 17, 2006 trial date. The documents noticed further show that appellant failed to appear on November 17, 2006. Thus, under Hunter, these documents provide "'prima facie evidence that such failure to appear [was] willful,'" id. at 721, 427 S.E.2d at 200 (quoting Trice, 525 A.2d at 179) (alterations in original), and the trial court was entitled to infer that appellant's failure to appear was willful. Because appellant presented no evidence to rebut this inference, we hold that the evidence was sufficient to support appellant's conviction for failure to appear on November 17, 2006.

### 3. Failure to Provide Support

Code § 20-61 provides, "[A]ny parent who deserts or willfully neglects or refuses or fails to provide for the support and maintenance of his or her child under the age of eighteen years . . . the . . . child or children being then and there in necessitous circumstances, shall be guilty of a misdemeanor." Appellant argues that the evidence was insufficient to show that his children were in "necessitous circumstances" as a consequence of his failure to provide support.

To support appellant's conviction under Code § 20-61, the Commonwealth must prove that appellant "deserted or wilfully neglected to provide for the support of his wife or minor children, leaving them in . . . necessitous circumstances." Burton v. Commonwealth, 109 Va. 800, 804, 63 S.E. 464, 466 (1909) (interpreting a predecessor statute to Code § 20-61, Acts 1904, p. 208, Code (1904), § 3795c). Whether one is in "necessitous circumstances" is a question of fact "[left] to the [finder of fact] to say whether or not the facts established the charge, subject always to review by the court in a proper case and upon familiar principles." Id. at 805, 63 S.E. at 466.

Code § 20-61 does not define "necessitous circumstances." In determining whether such circumstances have been proved, the Supreme Court of Virginia has said,

> There is no fixed standard by which the law undertakes to define what shall constitute . . . "necessitous circumstances." It may vary with the conditions to which the parties have been accustomed. The necessaries of one person may be the luxuries of another, reared in and habituated to different surroundings.

Id. We note that the predecessor statute to Code § 20-61 prohibited desertion or willful neglect of one's children, leaving them in "destitute or necessitous circumstances." Id. at 804, 63 S.E. at 466. In contrast, Code § 20-61 prohibits neglect or failure to provide support for a child "being then and there in necessitous circumstances," with no mention of destitution. Black's Law Dictionary defines "necessitous circumstances" as "Living in a state of extreme want; hard up." Black's Law Dictionary 1059 (8th ed. 2004). Thus, while the legislative intent in removing the element of destitution from Code § 20-61 may be unclear, the use of "necessitous circumstances" suggests that the neglected children must have financial or other needs, such as housing, medical care, or sustenance, that are unmet.

In the instant case, appellant argues that the evidence was insufficient to support his conviction for failure to support because the Commonwealth failed to prove that appellant

- 10 -

*caused* the children's necessitous circumstances or, in the alternative, because Howard's testimony showed that the children were *not* in necessitous circumstances.[2]

We reject appellant's contention that the Commonwealth was required to prove that appellant's failure to support his children caused their necessitous circumstances. Code § 20-61 does not say that a parent's failure to provide for the support and maintenance of his child must *cause* the child's necessitous circumstances; rather, the statute provides that the failure to support must occur with the "child or children being then and there in necessitous circumstances." Code § 20-61. When statutory language is "clear and unambiguous, [reviewing courts] apply the statute according to its plain language." Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006) (internal citations omitted). Under the plain language of Code § 20-61, no proof of causation is required to support a conviction.

Furthermore, in Burton, the Supreme Court of Virginia stated that the breach of the duty to support one's minor children occurs "either at the moment of the desertion or at any time during the continuance of the wilful neglect to make provision for his wife or minor children, whom he has left at the moment of desertion, or who have since *been rendered* destitute or in necessitous circumstances." 109 Va. at 804, 63 S.E. at 466 (emphasis added). As specifically interpreted by the Supreme Court of Virginia, this language does not require that the desertion cause the necessitous circumstances, as a breach may occur at any time the children are

---

[2] Although appellant does not argue that the Commonwealth failed to prove his intent to desert or neglect his children, we note that Code § 20-81 provides:

> Proof of desertion or of neglect of spouse, child or children by any person shall be prima facie evidence that such desertion or neglect is willful; and proof that a person has left his or her spouse, or his or her child or children in destitute or necessitous circumstances, or has contributed nothing to their support for a period of thirty days prior or subsequent either or both to his or her departure, shall constitute prima facie evidence of an intention to abandon such family.

- 11 -

"rendered destitute or in necessitous circumstances," whatever the cause. Therefore, we hold that the evidence was not insufficient to support appellant's convictions under Code § 20-61 for its failure to prove that appellant's failure to support his children caused their necessitous circumstances.

In the alternative, appellant argues that because Howard testified that she received sole possession and ownership of the marital residence on November 5, 2004, and was making approximately $30,000 a year from her independent business in this time period, the children were not in necessitous circumstances from September 6, 2004, to September 5, 2006. Furthermore, appellant argues that Howard's testimony that she obtained a real estate license and would not describe herself as being destitute from February 1, 2006, to January 3, 2007, shows that the children were not in necessitous circumstances during that time period.

However, Howard also testified that between September 2004 and September 2005, the bank began foreclosure proceedings on the house in which she and the children lived, the family cars were repossessed, and Howard was forced to accept charity from her church and a food bank to feed her children. Even when Howard testified she would not classify herself as "destitute" during the time period from February 2006 to January 2007, she also testified that she was still using the food bank and charity from her church and that the foreclosure proceedings on her home continued. In light of this testimony, we cannot say that the trial court's factual finding that the children were in "necessitous circumstances" from September 6, 2004, to September 5, 2006 and February 1, 2006, to January 3, 2007, was plainly wrong or without evidence to support it. Therefore, we hold that the evidence was sufficient to support appellant's convictions under Code § 20-61.

- 12 -

## C. Double Jeopardy

Appellant also contends that his two convictions for violations of Code § 20-61 were in error because the conduct complained of under Code § 20-61 is one continuous wrongdoing not subject to multiple indictments. Appellant concedes on brief that this assignment of error essentially asserts that principles of double jeopardy bar his multiple convictions for violations of Code § 20-61.

Code § 19.2-266.2 provides

> A. Defense motions or objections seeking . . . (ii) dismissal of a warrant, information, or indictment or any count or charge thereof on the ground that: . . . (b) the defendant would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment to the Constitution of the United States or Article I, Section 8 of the Constitution of Virginia; . . . shall be raised by motion or objection.
>
> B. Such a motion or objection in a proceeding in circuit court shall be raised in writing, before trial. The motions or objections shall be filed and notice given to opposing counsel not later than seven days before trial . . . . The circuit court may, however, for good cause shown and in the interest of justice, permit the motions or objections to be raised at a later time.

Appellant failed to raise his double jeopardy objection in writing before trial, as required by Code § 19.2-266.2. But cf. Sykes v. Commonwealth, 37 Va. App. 262, 266 n.1, 556 S.E.2d 794, 796 n.1 (2001) (suggesting that a defendant's failure to make a timely Code § 19.2-266.2 argument may not bar a defendant from raising a double jeopardy argument on appeal when the Commonwealth does not raise the timeliness issue before the trial court).[3] Moreover, appellant

---

[3] Although appellant argued in his reply brief that the Commonwealth failed to raise Code § 19.2-266.2 before the trial court, appellant provided *no* principles of law or authority to support his argument that the Commonwealth's failure barred it from relying on Code § 19.2-266.2 on appeal. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) (declining to address an appellant's argument that was "not fully developed in the appellant's brief"). Therefore, we decline to address appellant's claim that Code § 19.2-266.2 does not bar his double jeopardy argument because of the Commonwealth's failure to raise the lack of compliance with Code § 19.2-266.2 before the trial court.

does not argue that the good cause or ends of justice exception to Code § 19.2-266.2 should be invoked, nor does the record reflect any reason to do so. As a result, we find that appellant waived this objection.[4]

## D. Election of Civil Child Support

Finally, appellant argues that Howard's election to pursue civil child support precludes a prosecution for criminal failure to provide child support under <u>Boaze v. Commonwealth</u>, 165 Va. 786, 183 S.E. 263 (1936). In <u>Boaze</u>, the Court reversed a father's conviction for failure to pay child support in violation of Code § 1936, as amended by Acts 1922, ch. 485, a predecessor statute to Code § 20-61. 165 Va. at 793, 183 S.E. at 266. Therein, the father had been arrested based upon a warrant issued upon the complaint of the mother that the father had failed to pay child support in accordance with an earlier support decree. <u>Id.</u> at 788, 183 S.E. at 263. The father's conviction was reversed because he was tried without a jury. <u>Id.</u> at 789, 183 S.E. at 264.

---

[4] We note that the Double Jeopardy Clause, U.S. Const. amend. V, prohibits only "cumulative punishments for convictions on the same offense" and "does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution." <u>Ohio v. Johnson</u>, 467 U.S. 493, 500 (1984). Therefore, the trial court in the instant case may have been incapable of ruling on a motion by appellant alleging double jeopardy violations until the conclusion of trial, when the alleged cumulative punishments for convictions on the same offense were imposed. Nonetheless,

> When interpreting statutes, courts "ascertain and give effect to the intention of the legislature." That intent is usually self-evident from the words used in the statute. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result.

<u>Commonwealth v. Barker</u>, 275 Va. 529, 536, 659 S.E.2d 502, 504 (2008) (quoting <u>Boynton v. Kilgore</u>, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006)). Because the plain language of Code § 19.2-266.2 requires without exception that defense motions or objections seeking dismissal of an indictment on the ground that the defendant would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment to the Constitution of the United States or Article I, Section 8 of the Constitution of Virginia be raised in writing before trial, we recognize that a defendant must raise such an objection in writing before trial to preserve his objection, even if the trial court may be incapable of ruling on the motion until after the defendant is convicted and sentenced.

However, in dicta, the Court also stated that the father's conviction was improper because the mother had obtained a support decree which the court had "ample power in contempt proceedings to enforce," and "[t]he judgment in the [criminal prosecution], so far as it provides for the support of these children, [was] substantially but an affirmation of what already had been done." Id. at 793, 183 S.E. at 266. Because the mother "elected to proceed under the decree," the Court said, she must "abide by her election." Id.

In reaching its decision that the father's conviction should be reversed because of the earlier support decree, the Boaze Court relied upon Wright v. Wright, 164 Va. 245, 178 S.E. 884 (1935). 165 Va. at 792, 183 S.E. at 265. In Wright, the Court upheld the trial court's dismissal of a wife's bill of complaint seeking alimony and divorce on the grounds of *res judicata*. 164 Va. at 257, 178 S.E. at 889. The wife had previously "instituted proceedings against [the husband] in the Juvenile and Domestic Relations Court of Richmond, charging [criminal] non-support" and been awarded $50 a month in support from the husband. Id. at 248, 178 S.E. at 885. However, on appeal, the court reversed the husband's conviction. Id. at 249, 178 S.E. at 885. Only then did the wife file the bill of complaint seeking alimony and a divorce. Id. The court found that the wife "has been afforded two distinct methods of compelling the delinquent husband to provide for her support and maintenance," criminal prosecution for desertion and civil award of maintenance during pendency of a suit for divorce. Id. at 251, 178 S.E. at 886. The Court held that "[h]aving been afforded a choice of remedies, the wife must elect which remedy she will pursue, as it is inconceivable that the legislature intended that she should have the right to pursue both remedies and thus make the husband pay twice for one delinquency," id., and that *res judicata* barred the wife's suit because the parties and issue were the same and the issue had been decided on its merits by a court of competent jurisdiction, id. at 252, 178 S.E. at 887.

Because appellant relies upon Boaze, which relies upon Wright, in which the Court applied *res judicata*, appellant asserts that principles of *res judicata* bar his prosecution for violation of Code § 20-61. *Res judicata*

> precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction. It rests upon the principle that a person should not be required to relitigate the same matter a second time "with the same person or another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue, which has been necessarily tried and fully determined, upon the merits, by a court of competent jurisdiction . . . ."

Neff v. Commonwealth, 39 Va. App. 13, 18, 569 S.E.2d 72, 75 (2002) (quoting Patterson v. Saunders, 194 Va. 607, 614, 74 S.E.2d 204, 209 (1953)). Under well-settled principles, *res judicata* bars a party from raising not only "every question actually raised and decided" previously, but also "every claim which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time." Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 676 (1919).[5] The burden is on the party asserting the doctrine to prove by a preponderance of the evidence that the "'issue was previously raised and decided by a tribunal in a prior cause of action.'" Neff, 39 Va. App. at 18, 569 S.E.2d at 75 (quoting Fodi's v. Rutherford, 26 Va. App. 446, 449, 495 S.E.2d 503, 505 (1998)). In order for the doctrine to apply, the party asserting preclusion "must prove the identity of: (1) the remedies sought; (2) the cause of action; (3) the parties; and (4) the quality of the persons for or against whom the claim is made." Id. (citations and internal quotations omitted).

---

[5] Effective July 1, 2006, Rule 1:6 of the Rules of the Supreme Court of Virginia precludes successive causes of action arising from the same conduct, transaction, or occurrence against the same defendants regardless of the legal elements upon which the claims depend, or the particular remedies sought. However, because Rule 1:6 applies to all Virginia judgments entered in civil actions *commenced* after July 1, 2006, Va. Sup. Ct. R. 1:6(b), and Howard's suit for child support was instituted before July 1, 2006, Rule 1:6 is inapplicable here.

Because appellant cannot prove the identity of the parties, appellant's argument that *res judicata* bars his prosecution under Code § 20-61 fails. In the earlier proceeding that appellant alleges bars his criminal prosecution, i.e., the Stafford County Juvenile & Domestic Relations District Court proceedings resulting in the support order, the parties involved were appellant and Howard. In contrast, the Commonwealth directly indicted appellant for criminal non-support in violation of Code § 20-61 in the current proceeding; Howard was not a party to the instant criminal prosecution. Similarly, this case is distinguishable from Boaze, 165 Va. at 788, 183 S.E. at 263, and Wright, 164 Va. at 248, 178 S.E. at 885, because in those cases, the mother and the wife instituted the criminal proceedings by petition, rather than direct indictment by the Commonwealth. Because there is no identity of the parties in appellant's criminal prosecution and the earlier proceedings in the Stafford County Juvenile & Domestic Relations District Court, we hold that *res judicata* does not bar appellant's convictions for violations of Code § 20-61.

### III. Conclusion

For these reasons, appellant's convictions for violations of Code § 20-61 are affirmed. In addition, appellant's conviction for misdemeanor failure to appear on November 17, 2006, in violation of Code § 19.2-128, is affirmed. However, appellant's conviction for failure to appear on December 5, 2006, is reversed and dismissed.

Affirmed in part,
reversed and
dismissed in part.