UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Senior Judge Petty
Argued by videoconference

JOHN MICHAEL SHARPE

v.      Record No. 0506-25-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
MARCH 10, 2026

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

John S. Koehler (David L. Scyphers; R. Wayne Austin; The Law
Office of James Steele, PLLC; Scyphers & Austin, P.C., on briefs),
for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.

Following a jury trial, the trial court convicted John Michael Sharpe of 20 counts of

soliciting child pornography from a minor when the minor was at least 15 and the defendant was

at least 7 years older than the minor, in violation of Code § 18.2-374.1.[2]  Sharpe raises three

issues on appeal.  First, he argues that the trial court erred in determining that "each individual

image deemed to be illicit constituted an offense for the purposes of determining the unit of

prosecution . . . where the evidence showed that the act of soliciting the images was a single

continuing act."  Second, he argues that the trial court improperly admitted evidence of prior bad

acts where the evidence was more prejudicial than probative.  Finally, Sharpe argues that the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Sharpe was charged with 1 count for a first offense and 19 counts for a second or
subsequent offense.

court should have granted a mistrial due to juror misconduct. For the following reasons, we disagree and affirm the trial court.

## I. BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth," the prevailing party below. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

A. *The Offenses*

A.H. met Sharpe when she was in the eighth grade, and Sharpe was her choir teacher. In May 2021, when A.H. was 17 years old and finishing her junior year of high school, Sharpe, who was then 29 years old, approached A.H. and asked her to join the girls' tennis team. After A.H. started playing tennis, they exchanged phone numbers to "talk about tennis." Eventually they were "texting every day," until 2:00 or 3:00 a.m. Sharpe told her that he would get her a scholarship to play tennis at college. They also started playing tennis together outside of school, playing several days a week, often until the courts closed at 11:00 p.m. Sometimes, Sharpe would buy her gifts.

On May 23, 2021, when Sharpe and A.H. were texting, Sharpe mentioned bedroom cameras. A.H. made a joke about "people watching [her] on the cameras for money." Sharpe then told her about his friend that makes "crazy money" doing OnlyFans, which is "a website that you record yourself on and people can subscribe to it and pay money." They discussed the pros and cons of OnlyFans, before Sharpe made a joke about her "cam girl" character. He also told her that her "crop top" is where her power at tennis was coming from, as he had previously told her he thought her crop top was hot.

At some point, Sharpe added A.H. to Snapchat,[3] and their conversations continued through both text and Snapchat. Among other things, A.H. discussed her boyfriend and his request for nude photos, while Sharpe complained about how his girlfriend did not want to have sex. In one conversation, A.H. told Sharpe she was in the shower, and he responded with "Don't tempt me, Satan."

Things developed further on June 15, 2021. On that day, A.H., who had been at the pool, saw Sharpe at the nearby tennis courts and walked over to see him. A.H. was wearing her bathing suit, which had a green bikini top. She noticed that Sharpe was staring at her chest. When messaging on Snapchat later, Sharpe told A.H. that he had not realized that her body was "like that." He asked her for a picture of her in the green bikini, and she sent him the photo at 12:52 a.m. on June 16. Sharpe then asked her to take her top off, "grab her boob," and send a photo, which she did at 1:36 a.m. Later that day, at 11:36 p.m., he asked if she "had any other bras that [she] could try on," and she sent photos of herself in different color bras.

From that first day in June through November, Sharpe continued to ask A.H. for photographs. Sometimes he asked for photos generally, which A.H. testified that she "understood what he meant by that." At other times, he would make specific requests. His requests ranged from photos of specific body parts, such as her chest or butt, to specific poses, such as her with a vibrator in her mouth or "squeez[ing] [her] boobs together." A.H. testified that she could see that Sharpe had opened all the photos that she had sent to him, and after he received them, he would give her compliments.

Eventually, A.H. met her "current boyfriend," and her Snapchat communications with Sharpe slowed down. On November 6, 2021, A.H. showed her friend the messages between her

---

[3] Snapchat is a social media application. It allows users to communicate through text or video, and it allows users to send pictures. Photos sent through the app automatically delete unless specifically saved.

and Sharpe, and her friend encouraged her to discuss it with her therapist. On that same day, A.H. told Sharpe that she was "done with sending him pictures" and that she was "going to tell." Later, in December 2021, A.H. informed her therapist that she was "getting groomed" and sending photos to someone, but she did not identify Sharpe. Her therapist, as a mandated reporter, notified the Department of Social Services, which then contacted law enforcement.

The investigation ultimately led police to Sharpe. In March 2022, a grand jury indicted Sharpe on multiple offenses, including one count of enticing a minor to perform in pornography, first offense, in violation of Code § 18.2-374.1(B), and 26 counts of enticing a minor to perform in pornography, second or subsequent offense, in violation of Code § 18.2-374.1(B).[4]

B. *Issues at Trial*

i. A.Y.'s testimony

At trial, the Commonwealth sought to present testimony from A.Y., who was also a minor female student of Sharpe's. Sharpe objected, arguing that A.Y.'s testimony was evidence of prior bad acts and therefore inadmissible. The Commonwealth argued that A.Y.'s testimony was admissible under exceptions to the rule prohibiting evidence of prior bad acts. It asserted that the testimony was admissible to show common scheme, Sharpe's identity as perpetrator, and to negate good faith. The court concluded that A.Y's proposed testimony fell within the exceptions argued by the Commonwealth. It also found that the probative value outweighed any prejudicial effect. Thus, the court permitted A.Y.'s testimony.

A.Y. testified about her relationship with Sharpe. Like A.H., Sharpe started communicating with A.Y. between her junior and senior years of high school. He first communicated with her in his role as a band camp instructor, but his communications quickly

---

[4] The trial court struck seven of the Code § 18.2-374.1(B) charges on Sharpe's motion to strike following the Commonwealth's case-in-chief.

moved into "inappropriate" topics. A.Y. testified that she and Sharpe communicated over Snapchat, and he soon started asking her to send him pictures of herself in her "favorite bra and favorite underwear," requesting different hairstyles, make-up, and poses. He also discussed the possibility of helping her obtain music scholarships. A.Y. testified that Sharpe discussed her boyfriend with her, and he told her the relationship would not last after high school. Sharpe also told A.Y. that they would go to Florida and get married after she turned 18.

Over Sharpe's objection, the trial court instructed the jury that it could consider this evidence of prior bad acts only for limited purposes, including showing a common scheme or plan, evidence of identity, negating good faith, and "for no other purpose."

## ii. Juror Misconduct

After the Commonwealth rested its case, the court took a recess. During that time, a deputy took several members of the jury out to smoke. The jurors had been instructed at the beginning of trial that they were "not [to] discuss the case with anyone, including each other . . . or remain within hearing of anyone who is discussing the case during a break or recess." They were also instructed not to decide any issues until the case was submitted to the jury. Despite those instructions, juror K.N. told three other jurors during the smoke break that "he f[elt] the Commonwealth [wa]s correct, that they [we]re right." The deputy reported the incident to the trial court, and the court put the deputy on the witness stand and questioned him under oath. The deputy testified that after juror K.N. made that statement, there were no other discussions. The other three jurors did not acknowledge the statement. They simply "continued to discuss their daily activities like smoking cigarettes and the kids and that was pretty much it."

Sharpe moved for a mistrial. He argued that the remark made in the presence of other jurors "taints the jury, the other three." He asserted that the issue could not be remedied and that the court had no other recourse but to declare a mistrial. The trial court denied the motion,

finding that the issue was with one juror, and it was not "deliberations amongst jurors." The court removed juror K.N. and replaced him with an alternate. It also brought the rest of the jury in, informed them of the issue without repeating K.N.'s statement, and admonished them not to discuss the matter until instructed to begin deliberations.

### iii. Motion to Set Aside

Ultimately, the jury found Sharpe guilty of the first offense charge and the remaining 19 second or subsequent offenses charges under Code § 18.2-374.1(B). Sharpe filed a motion to set aside the verdict. Among other things, he argued for the first time that any violation of Code § 18.2-374.1(B)(1) was a "single continuing offense," which he contends began when he "first enticed [A.H.] to produce a pornographic image and ended only when their communication ceased." Alternatively, he argued that there were, at most, 5 distinct offenses rather than the 20 distinct offenses charged by the Commonwealth. He asked the court to determine the correct "unit of prosecution" under Code § 18.2-374.1(B)(1). The court denied the motion to set aside the verdict. It found that under the statute, "the enticement is the issue, not the receipt of how many photos someone may receive." A.H. had testified that Sharpe had asked for the photos on each occasion, and the court was satisfied that each charge that went to the jury involved a separate enticement. Sharpe now appeals.

## II. ANALYSIS

### A. *Sharpe's double jeopardy argument on the unit of prosecution was not properly preserved.*

Sharpe first asserts that the trial court erred in denying his motion to set aside the verdict. He argues that the court incorrectly determined the "unit of prosecution" under Code

- 6 -

§ 18.2-374.1, which he contends resulted in multiple punishments for the same offense in violation of constitutional double jeopardy protections.[5]

But Sharpe failed to preserve his double jeopardy argument for appellate review. A defense motion seeking dismissal of a charge based on a double jeopardy violation is required to be "raised in writing, before trial." Code § 19.2-266.2(A)(ii)(b), (B); *see also* Rule 3A:9(c) (requiring a motion raising double jeopardy to be made before trial). The plain language of this statute "requires without exception that defense motions or objections seeking dismissal of an indictment on the ground that the defendant would be twice placed in jeopardy . . . be raised in writing before trial." *Williams v. Commonwealth*, 57 Va. App. 750, 768 n.4 (2011). Sharpe did not make a pretrial motion to dismiss based on double jeopardy grounds.

On brief to this Court, Sharpe contends that the provisions of Code § 19.2-266.2 do not apply "where, as here, the circuit court permits the motion to be raised at a later time, receives argument, and rules definitively on the substance of the motion." While Code § 19.2-266.2(B) does contain an exception to the pretrial requirement, it does so only "for good cause shown and in the interest of justice." Sharpe did not argue below that good cause existed or that it was in the interests of justice. *See Williams*, 57 Va. App. at 768 (noting that the appellant did not argue that the good cause exception in Code § 19.2-266.2(B) should be invoked). He provides no explanation whatsoever for his failure to raise the issue before trial. *See Upchurch v. Commonwealth*, 31 Va. App. 48, 52 (1999) (noting that a failure to exercise due diligence to discover a basis for a Code § 19.2-266.2 motion does not constitute good cause to excuse a defendant from the pretrial filing requirements). Nor does the record show a reason for this

---

[5] During oral argument, Sharpe suggested that his argument was a statutory argument rather than a double jeopardy argument. But his briefing to this Court frames the issue as a double jeopardy issue, and we treat it as such.

failure. Because Sharpe did not comply with the statute's requirements to file a pretrial motion to dismiss on double jeopardy grounds, that issue is waived.

B. *The prejudicial effect of A.Y.'s testimony did not outweigh its probative value.*

Sharpe next argues that the trial court abused its discretion by admitting A.Y.'s testimony. Specifically, he argues that the prejudicial effect of the evidence outweighs its probative value.[6] We disagree.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Anderson v. Commonwealth*, 69 Va. App. 396, 402-03 (2018) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter*, 293 Va. at 543 (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Generally, evidence "'tend[ing] to show that the accused is guilty of other crimes and offenses at other times' is not admissible if 'offered merely to show [the accused's] propensity to commit' the charged crime." *Harvey v. Commonwealth*, 76 Va. App. 436, 475 (2023) (alterations in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714-15 (2008)). But there are exceptions to the rule. *Id.* "Even so, such evidence is admissible only if its 'legitimate probative value . . . outweigh[s] its incidental prejudice.'" *Id.* (alterations in original) (quoting *Kenner v. Commonwealth*, 299 Va. 414, 427 (2021)); *see also* Va. R. Evid. 2:404(b).

---

[6] On brief, Sharpe also appears to argue that A.Y.'s testimony was inadmissible prior bad acts evidence. His assignment of error, however, contends only that it was more prejudicial than probative. *See Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant."). Thus, we determine only whether the admitted evidence was more prejudicial than probative.

On some level, "all 'evidence tending to prove guilt is prejudicial[,]' at least from the point of view of the person standing trial." *Thomas v. Commonwealth*, 44 Va. App. 741, 757 (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "'Virginia law . . . intervenes' in such circumstances 'only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences. And even then, [the issue is] a matter of degree.'" *Harvey*, 76 Va. App. at 479 (alterations in original) (quoting *Thomas*, 44 Va. App. at 758). "The responsibility for balancing these considerations rests with the sound discretion of the trial court." *Id.*

Reviewing the record here, we cannot say that the trial court abused its discretion in admitting A.Y.'s testimony. Sharpe's interactions with A.Y. were nearly identical to his interactions with A.H., from how he approached each of them to how he slowly progressed to soliciting them for explicit photographs. Thus, the evidence had legitimate probative value in that it was relevant to prove Sharpe's identity and his use of a common scheme. It was also probative to negate good faith, as Sharpe had claimed that he had never engaged in any relationship with a student.

Furthermore, the trial court specifically instructed the jury to consider A.Y.'s testimony only for the permitted purposes, and it expressly instructed the jury it could consider the testimony "for no other purpose." This instruction on the proper use of the testimony "dissipate[d] its incidental prejudice to" Sharpe. *Detzler v. Commonwealth*, No. 1779-08-4, slip op. at 8, 2010 Va. App. LEXIS 132, at *13 (Apr. 6, 2010).[7] "[W]e presume that the jury follows the instructions that are given, and nothing in the record presented here plainly shows

---

[7] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012) (quoting Rule 5A:1(f)).

otherwise." *Gilliam v. Immel*, 293 Va. 18, 26 (2017). Accordingly, the trial court did not abuse its discretion in admitting A.Y.'s testimony.

C. *The trial court properly addressed the juror misconduct and did not abuse its discretion by denying the motion for a mistrial.*

Sharpe argues that the trial court should have granted his motion for a mistrial based on juror misconduct. He contends that a juror's improper statements to three other jurors had a "prejudicial impact on the integrity of the jury."

"[W]e review [the] denial of a motion for a mistrial for abuse of discretion." *Bethea v. Commonwealth*, 68 Va. App. 487, 500 (2018) (second alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 220 (2013)). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Id.* at 506-07 (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

But "the mere fact of juror misconduct does not automatically entitle" the defendant to a mistrial. *Robertson v. Metro. Wash. Airport Auth.*, 249 Va. 72, 76 (1995). On appeal, we will not reverse a denial of a motion for mistrial "unless there exists a manifest probability that the denial of a mistrial was prejudicial." *Bethea*, 68 Va. App. at 507 (quoting *Humbert v. Commonwealth*, 29 Va. App. 783, 792 (1999)). And the burden of establishing "a probability of prejudice to the accused" is on the appellant. *Id.* (emphasis omitted) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 199 (2004)).

Sharpe has not met his burden of establishing a probability of prejudice. The bailiff immediately reported the juror misconduct to the court. The trial court properly investigated the misconduct. The bailiff testified that one juror made a single improper comment in front of three other jurors when they stepped outside. The other jurors did not respond or acknowledge the

comment, and the other jurors simply changed the subject to "discuss their daily activities."[8]

The court immediately excused the juror who made the improper comment. It also brought the remaining jurors back into the courtroom, notified them of the juror's removal (without revealing the comment), and it admonished the jury not to discuss the case, or allow others to do so, until it was time to deliberate. The court investigated and took appropriate action. Nothing in the record establishes a probability of prejudice to Sharpe. Accordingly, we find that the trial court did not abuse its discretion in denying the motion for a mistrial.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

*Affirmed.*

---

[8] On brief, Sharpe suggests that the trial court should have inquired of the other three jurors whether the improper comment had impacted their view of the case. To the extent that Sharpe challenges the trial court's procedure, that issue is not preserved, as Sharpe did not make that argument below. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). Nor did Sharpe ask the trial court to question the other three jurors.