COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


JEFFREY EUGENE NEEL
                                                          OPINION BY
v.       Record No. 0369-06-4                    JUDGE LARRY G. ELDER
                                                         MARCH 13, 2007
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                          Jeffrey W. Parker, Judge

          Jud A. Fischel for appellant.

          Josephine F. Whalen, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


         Jeffrey E. Neel (appellant) appeals from his jury trial conviction for leaving the scene of

an accident involving personal injury in violation of Code § 46.2-894.  On appeal, he concedes

the evidence was sufficient to prove he failed to stop at the scene of an accident involving

property damage, and he does not challenge his conviction for that offense, but he contends the

evidence was insufficient to prove he knew or should have known the accident involved personal

injury.  We hold the facts were insufficient to support his conviction.  Thus, we reverse the

conviction and dismiss the indictment.

                                            I.

                                       BACKGROUND

         At about 5:30 p.m. on August 9, 2004, employees of the Prince William and Fauquier

County Sheriff's Departments responded to a Fauquier County location where "a woman . . . had

stopped in the middle of the road" and "was blocking traffic."  One deputy spoke with the

woman while a second, Deputy Ron Christefano, directed traffic. Their sheriff's department vehicles were parked at the scene with emergency lights flashing.

Deputy Christefano observed a car approach the scene and "slow[] down properly." That car was driven by Deanna Swanson. Just as Swanson was coming to a stop about ten feet from Deputy Christefano, a car driven by appellant approached behind Swanson. Appellant's car "slowed down some," but while still traveling at "a good speed," it "rear-end[ed]" Swanson's car. Swanson described the impact as "rather hard" and said "[i]t pushed [her vehicle forward] some." Deputy Christefano described the impact as a "bang." He said it was "like a crash. A rear-end. That's all it was. But I definitely heard it and saw it."

The accident caused "[n]ot a great deal [of damage to Swanson's car], but some." She described the damage as "a crack in the cover of the light on the back" and said, "I can't hardly tell it's there." Her insurance company estimated the cost to repair the damage as "$600 and some."

"[W]ithin seconds" after the impact, Deputy Christefano approached Swanson's car and inquired whether "everybody" in Swanson's vehicle was "okay" and whether anybody was "hurting." Swanson looked at the other occupants of her vehicle, two of her grandchildren, and responded to Deputy Christefano that "she was fine," they were "okay." Deputy Christefano told Swanson to pull over to the side of the road, and she did so. Deputy Christefano did not know whether appellant was able to hear his conversation with Swanson. Deputy Christefano did not assess the damage to Swanson's vehicle at the time, but he did not recall that "any pieces of [Swanson's] car" or any "broken glass that was attributable to this accident" were "in the roadway" at that time.

Deputy Christefano then went immediately to appellant's window and asked appellant, "Is everything okay?" Appellant "really had no response." Deputy Christefano then "told

[appellant] to follow behind [Swanson] and pull over on the side of the road." Deputy Christefano did not discuss with appellant anything concerning the condition of Swanson or her passengers.

When Deputy Christefano completed his brief initial conversations with Swanson and appellant, "an ambulance was on the scene for the original [incident]" that had caused the officers to stop, and Deputy Christefano "let them know about what happened there." When Deputy Christefano turned his back to talk to the other deputy on the scene, appellant drove off.

Deputy Christefano gave chase and apprehended appellant at least a mile from the scene. When the officers apprehended appellant, they observed that his vehicle had a dent on the hood and bumper area that was "[n]ot very big," "approximately twelve inches maybe at the most across."

Unbeknownst to Deputy Christefano or appellant, Swanson had "deteriorating discs" and had undergone neck surgery about eight months prior to the collision at issue. Swanson testified that between her December 2003 neck surgery and the rear-end collision with appellant on August 9, 2004, she had experienced no pain in her neck and that after the accident she felt pain in her neck and head. She testified that as of the date of trial, July 6, 2005, she was "still hav[ing] problems with [her] neck." Swanson received medical attention at the scene of the August 9, 2004 accident, but no evidence indicated she received that attention while appellant was still present.

Appellant was indicted, *inter alia*, for violating Code § 46.2-894 by leaving the scene of an accident in which a person was injured without stopping to report his name, address, and other personal information or render reasonable assistance to the person injured.

Following the Commonwealth's presentation of evidence in appellant's jury trial, appellant moved to strike, contending, *inter alia*, that the evidence failed to prove he knew or

should have known anyone had been injured as a result of the accident. The trial court denied the motion. At the conclusion of all the evidence, appellant renewed his motion to strike, which the court again denied. The jury convicted appellant of the charged offenses, and he noted this appeal.

II.

ANALYSIS

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. See, e.g., Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

Code § 46.2-894 provides in relevant part as follows:

> The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property.

If the accident resulted in injury or death, failure to comply with Code § 46.2-894 is a felony. Code § 46.2-894. "The identification requirement is intended to facilitate accident investigation and to preserve public order." Johnson v. Commonwealth, 14 Va. App. 769, 771, 418 S.E.2d 729, 731 (1992).

In Herchenbach v. Commonwealth, 185 Va. 217, 38 S.E.2d 328 (1946), the Supreme Court interpreted a predecessor version of this statute as follows:

- 4 -

> Knowledge necessarily is an essential element of the crime. This does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, "the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or collision, then it is the duty of the operator to stop his vehicle."

Id. at 220, 38 S.E.2d at 329 (quoting 5 Am. Jur. 921). We subsequently interpreted this language as requiring the Commonwealth to prove "that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case." Kil v. Commonwealth, 12 Va. App. 802, 811, 407 S.E.2d 674, 679 (1991). "This approach . . . has been characterized as 'requiring subjective knowledge of the collision while holding the driver to a stricter reasonable man standard as to the fact or extent of the injury' . . . ." Id. at 810, 407 S.E.2d at 679 (quoting Commonwealth v. Kauffman, 470 A.2d 634, 637 (Pa. Super. Ct. 1983)).

Knowledge of injury may be imputed to a driver "where the fact of personal injury is visible or where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries." People v. Carter, 52 Cal. Rptr. 207, 208 (Cal. Ct. App. 1966) (citation omitted) (holding that where impact "slightly damaged" bumper or fender of both cars and bumper had to be pulled away from wheel of one so it could be moved, "collision was not of sufficient magnitude to compel the conclusion that injuries had probably occurred"); see also Marjorie A. Caner, Annotation, Necessity and Sufficiency of Showing, in Criminal Prosecution Under "Hit-and-Run" Statute, Accused's Knowledge of Accident, Injury, or Damage, 26 A.L.R.5th 1, §§ 26, 29, 30 (1995 & Supp. 2006) (finding relevant the force of impact and amount of damage sustained by vehicles). "[I]n some cases, such as [those involving] proof of intent or

knowledge, [circumstantial evidence] is practically the only method of proof." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided [the evidence as a whole] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Here, we conclude as a matter of law that the evidence, viewed in the light most favorable to the Commonwealth, was insufficient to support a finding that appellant knew or should have known anyone in Swanson's car was injured. No evidence established that appellant or Swanson left their cars or that emergency personnel, other than Deputy Christefano, approached Swanson's car while appellant was at the scene. Although an ambulance was present when Deputy Christefano finished his brief conversations with Swanson and appellant immediately following their rear-end collision, it was undisputed that the ambulance was present at the scene to respond to the original incident that had disrupted traffic. It was also undisputed that medical personnel made no effort to attend to Swanson while appellant was at the scene. Thus, the arrival of an ambulance at the scene of the pre-existing traffic incident almost immediately following the occurrence of appellant's rear-end collision with Swanson, viewed in the light most favorable to the Commonwealth, was not evidence indicating a reasonable person in appellant's position knew or should have known before he fled that someone in Swanson's car had been injured.[1]

Further, although the impact from the rear-end collision was audible, described by Deputy Christefano as a "bang,"[2] and pushed Swanson's car forward, appellant was present as

---

[1] The Commonwealth, in apparent recognition of this lack of relevance, made no attempt to rely on the presence of the ambulance in arguing to the jury.

[2] In ruling on the motion to strike, the trial court cited the occurrence of a "loud bang" and found this was enough to impose on appellant a duty to investigate in regard to property

Swanson, while remaining behind the wheel of her own car, spoke to Deputy Christefano and then pulled her car to the side of the road. Deputy Christefano then came immediately to appellant's car rather than attempting to render any type of aid to Swanson or any other occupants of her car or to call any of the other people then on the scene to render aid to Swanson or her passengers. Deputy Christefano also called attention to the fact that Swanson moved the car under her own power, telling appellant to "follow behind her and pull over on the side of the road."

Finally, Swanson described the damage to her car as "a crack in the cover of the light on the back" that was so minor "[she could] hardly tell [it was] there." Deputy Christefano testified that he did not recall observing any debris in the roadway as a result of the impact between Swanson's and appellant's vehicles. Thus, the minimal nature of the damage to Swanson's vehicle was insufficient to put appellant on notice that she had been injured. Although the evidence would support a finding that appellant's front bumper and hood may have sustained some damage in the collision, no evidence establishes that appellant would have known about this damage before he fled the scene. Compare Cottee v. Commonwealth, 31 Va. App. 546, 558, 525 S.E.2d 25, 31 (2000) (holding evidence sufficient to prove knowledge where defendant "revved" engine and drove into the two victims, after which "[s]everal bystanders were shouting that people were trapped under the car"); Kil, 12 Va. App. at 812-13, 407 S.E.2d at 680 (holding evidence sufficient to prove knowledge where impact caused extensive damage to right side of van, scattered numerous glass particles along front seat, threw bodies of three victims distances of 45 to 135 feet from point of impact, and residents inside nearby homes at time of accident described impact as "a loud noise").

---

damage. However, the only witness who described the accident as causing a "bang" was Deputy Christefano, who was standing ten feet from the point of impact, and he described the accident as causing only a "bang," not a "loud bang."

Viewing the facts in the light most favorable to the Commonwealth, we hold as a matter of law that the evidence failed to prove appellant knew or should have known personal injury, as opposed to property damage,[3] had resulted from the collision at the time he fled the scene. To hold otherwise would be to permit a driver involved in any but the most minor of accidents to be convicted of felony hit-and-run for leaving the scene of the accident without personally investigating whether injury had occurred, regardless of how unforeseeable an injury was under the circumstances surrounding the accident. Whatever one's moral duty may be upon the occurrence of an accident, the applicable law in the form of the text of the statute itself and Virginia's appellate court decisions interpreting it does not permit conviction for felony hit-and-run based solely upon the happening of an accident and a failure to investigate. Rather, such a conviction must be based on evidence, viewed in the light most favorable to the Commonwealth, proving beyond a reasonable doubt the driver knew or should have known that personal injury, not just property damage, had resulted from the collision. E.g., Kil, 12 Va. App. at 810-11, 407 S.E.2d at 679.

III.

For these reasons, we hold the evidence was insufficient to support appellant's felony conviction for leaving the scene of an accident involving personal injury in violation of Code § 46.2-894. Thus, we reverse the challenged conviction and dismiss the indictment.

Reversed and dismissed.

---

[3] As previously mentioned, appellant was convicted for the misdemeanor of leaving the scene of an accident involving property damage and does not challenge that conviction on appeal.

- 8 -

Haley, J., dissenting.

I respectfully dissent.

I.

Although admitting that a "jury's verdict will not be disturbed unless it is plainly wrong or without evidence to support it," Guda v. Commonwealth, 42 Va. App. 453, 457, 592 S.E.2d 748, 750 (2004), the majority nonetheless concludes "as a matter of law that the evidence, viewed in the light most favorable to the Commonwealth, was insufficient to support a finding that appellant knew or should have known anyone in [the victim's] car was injured." Respecting the jury's decision to the contrary, I dissent.

II.  FACTS

The following adds to and emphasizes the facts as set forth by the majority.

In December of the year preceding the August 9, 2004 accident, Ms. Swanson had had two surgeries in which rods were inserted "in [her] upper and lower back" because of "deteriorating discs." As to the accident, she testified that there was a "rather hard impact. It pushed us some" and that she "was frightened. And I felt pain." After she pulled to the shoulder, and the appellant had fled, "[t]he people from the emergency vehicles came over." After taking her blood pressure, which was found elevated, and upon her telling them of her pain, medical personnel "took her to the hospital." At the hospital a CT scan and X-rays were taken. Though Ms. Swanson was released from the hospital seven hours after arrival, as of the date of trial, approximately eleven months after the incident, she "still [has] problems with [her] neck." The damages to Ms. Swanson's car totaled approximately $600.

Deputy Ron Christefano heard a "bang" when appellant's vehicle collided with Ms. Swanson's. He testified that Ms. Swanson

> said she was okay. I told her to pull on the side of the road. I went over to the second vehicle and told [appellant] to . . . pull over on

- 9 -

the side of the road. When I did that, at that time an ambulance was on the scene for the original reason[4] why I went out there . . . . When I turned my back to talk to the other deputy, I looked over my shoulder and the [appellant] in the second vehicle shot off.

## III. JURY INSTRUCTIONS

The trial court considered the primary issue, that is, whether knowledge of injury could be attributable to a reasonable person under the circumstances, as one for jury determination. Relevant portions of the instructions to the jury follow:[5]

From Instruction 5 defining the elements of the offense: "(3) That the defendant knew, or should have known, that another person was injured by the accident."

Instruction 7: "The word 'injury' as used in these instruction[s] means any physical damage to the body caused by violence or accident."

From Instruction 8: "the Commonwealth must prove . . . knowledge of injury which would be attributed to a reasonable person under the circumstances of the case."[6]

From Instruction 9: "for an element may also be proved by circumstantial evidence. You may convict the defendant on circumstantial evidence alone . . . ."

## IV. ANALYSIS

The verdict of a jury "cannot be overturned on appeal unless no 'rational trier of fact' could have come to the conclusion it did." Stevens v. Commonwealth, 46 Va. App. 234, 248, 616 S.E.2d 754, 761 (2005) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d

---

[4] The dissent acknowledges that the ambulance had been called as a result of the accident that caused Ms. Swanson to slow and stop before being hit in the rear by the appellant. Nonetheless, an ambulance was "on the scene" when appellant fled.

[5] Appellant took no exception to these instructions.

[6] The language of this instruction was taken verbatim from Kil v. Commonwealth, 12 Va. App. 802, 811, 407 S.E.2d 674, 679 (1991) ("and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case").

444, 447 (2003) (en banc)).  See also Pease v. Commonwealth, 39 Va. App. 342, 355, 573

S.E.2d 272, 278 (2002) (en banc) ("We let the decision stand unless we conclude no rational

juror could have reached that decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003); O'Connell

v. Commonwealth, 48 Va. App. 719, 726, 634 S.E.2d 379, 382 (2006).  "This familiar standard

gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,

to weigh the evidence, and *to draw reasonable inferences from basic facts to ultimate facts*."

Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis added).

That standard of review does not permit us to "substitute our judgment for that of" a

properly instructed jury.  See Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160,

162 (2002).  It is my view the majority does not honor that standard and engages in the

substitution that standard prohibits.  Accordingly, I dissent.