COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia

EMMANUEL LAQUAN LASSITER, S/K/A
   EMMANUEL LAQUAUNN LASSITER
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0661-21-1                       JUDGE RICHARD Y. ATLEE, JR.
                                                          APRIL 26, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 Stephen C. Mahan, Judge

            Sarah R. Murphy (Office of the Public Defender, on brief), for
            appellant.

            Victoria Johnson, Assistant Attorney General (Mark R. Herring,[1]
            Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of the City of Virginia Beach ("trial court")

convicted Emmanuel Laquan Lassiter of felony hit and run, felony failure to appear, and driving

with a suspended license.[2]  He was sentenced to two years and six months' imprisonment, with

one year suspended.  On appeal, Lassiter contests his conviction for felony hit and run and

contends that the evidence was insufficient to prove he knew or should have known the accident

involved personal injury.  He also argues the evidence was insufficient to prove he "willfully"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] The Commonwealth also charged Lassiter with misdemeanor failure to appear based on his lack of attendance at a prior hearing.  The trial court granted Lassiter's motion to strike this count and dismissed it with prejudice.

failed to appear at his court date.[3]  For the following reasons, we disagree with Lassiter's contentions and affirm his convictions.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).  In doing so, we discard any conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  *Id.* at 473.

Between 6:30 p.m. and 7:00 p.m. on February 7, 2018, Lisa Goodman left her gym and drove her car home via Aragona Boulevard in Virginia Beach.  Goodman needed to make a left turn and stopped to wait for the oncoming traffic to pass.  She positioned her steering wheel to turn.  Goodman saw a car coming towards her in her rearview mirror, and "within a second, [she] was hit in the rear."  The car that collided with her had only one occupant, the driver, later identified as Lassiter.  The impact pushed Goodman's car into the cross street; she was unable to "control [her] steering because [her] foot was on the brake, and [she] was heading towards a street sign."  Goodman had to accelerate and "was able to steer away from hitting the street sign."  She was "in shock" when her car came to a stop, and she called 911 for assistance.

Lassiter's car had gone "slightly . . . under" Goodman's car, causing visible damage to Goodman's bumper and muffler.  Her muffler hit the ground.  Lassiter's car sustained extensive damage.  The front end was crumpled, and the hood of the car folded upward blocking much of the windshield.  Ultimately, neither vehicle could be driven from the scene.

---

[3] Lassiter does not challenge his conviction for driving with a suspended license.

- 2 -

A few minutes after the collision, and before the police arrived, Lassiter approached Goodman's car to inquire if she "was okay," to which she equivocally responded, "I think so." Lassiter did not provide Goodman with his name, address, driver's license number, registration number, or insurance information. Lassiter then left the scene of the accident on foot, leaving his car behind.

Shortly after Lassiter left the scene, Detective Yorgen of the Virginia Beach Police Department arrived. He spoke with Goodman and saw that the car that ran into her "was still located on Aragona Boulevard by itself with the front end smashed in." When Detective Yorgen inquired, Goodman described the individual who collided with her. Goodman did not ask Detective Yorgen for an ambulance.

Detective Yorgen could not locate the driver of the other vehicle at the scene of the accident and concluded that the car had been abandoned. He looked inside the vehicle to "find identifying information" so he could "[f]igure out who was involved in the crash." Inside the glove box, he found a traffic summons bearing Lassiter's name. Detective Yorgen also determined that Lassiter was the registered owner of the vehicle.

Goodman did not sustain cuts or bruises to her face, but she did suffer injuries to her hip, back, and leg because of the accident. She sought medical care the morning following the accident. Goodman's physician prescribed pain medicine and muscle relaxers, and Goodman began physical therapy for her injuries. She incurred medical expenses because of these injuries.

Detective Nolff also investigated the accident. He spoke with Goodman and reviewed her medical treatment. He also ran Lassiter's DMV abstract and determined that Lassiter's license had been suspended.

Detective Nolff contacted the yard to which Lassiter's car had been towed. The tow yard representative informed Detective Nolff that both a man and woman had contacted the tow

company asking about the vehicle, and the tow company provided Detective Nolff the telephone numbers for both individuals. Lassiter answered when Detective Nolff called the male's telephone number. Lassiter described the accident to Detective Nolff, stating that a "water bottle had [fallen] down onto the floorboard" and that the crash occurred when he bent down to pick it up. Lassiter explained "that he freaked out, and that's why he ran." He also admitted that he did not have a driver's license or insurance and that the vehicle was not registered. When asked, Lassiter informed Detective Nolff that he "had a couple [of] lumps" on his head because of the accident. Lassiter also stated that he knew his actions were wrong.

Lassiter was charged with hit and run and driving with a suspended license. The hearing was originally scheduled for December 10, 2018, but it was continued upon a defense motion until January 28, 2019. Although his counsel was present at the January 2019 hearing, Lassiter failed to appear, and he was charged with misdemeanor failure to appear. An order for capias was executed for Lassiter on February 25, 2019, and the trial court set bail. Lassiter signed a "Recognizance," secured by a bond, which notified him of his hearing set for May 1, 2019. In the Recognizance, Lassiter promised to appear at the hearing and acknowledged that failure to do so could be charged as a separate crime.

Upon a defense motion, Lassiter's May 1, 2019 hearing was continued until June 4, 2019. Goodman appeared as a witness for the June 2019 hearing. Lassiter, however, did not appear at the hearing, and the trial court subsequently charged him with felony failure to appear.

Lassiter's trial started on March 22, 2021. At the conclusion of the Commonwealth's evidence, Lassiter moved to strike the misdemeanor failure to appear charge. The trial court granted Lassiter's motion to strike this count and dismissed it with prejudice. Lassiter also moved to strike the remaining three counts, which the trial court denied. Lassiter presented no evidence and renewed his motions to strike, which the trial court again denied. Regarding the

felony failure to appear charge, the court noted that Lassiter was on a secured bond and that "[a]s a condition of his bond, [Lassiter] was to be present at that time, and . . . he had, what the record would establish, was ample Constitutional notice of the requirement that he was to appear in court on that date."[4] Based on the documents in the record and Goodman's testimony that Lassiter was not present, the trial court found that Lassiter failed to appear on the required date. As to the driving with a suspended license count, the trial court found the evidence was "overwhelming" that Lassiter's license was revoked at the time of the incident. Finally, for the hit and run count, the trial court found the Commonwealth's evidence to be credible, and it credited "all of the oral testimony that was received today and in conjunction with the other circumstantial evidence and given the benefit of reasonable inferences that logically and naturally flow from the evidence."

The trial court subsequently convicted Lassiter of felony hit and run, driving with a suspended license, and felony failure to appear. The trial court sentenced Lassiter to two years and six months' imprisonment, with one year suspended. This appeal followed.

## II. ANALYSIS

On appeal, Lassiter argues that the evidence was insufficient to support his convictions for both the hit and run and the felony failure to appear. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial

_____

[4] The trial court erroneously referred to the hit and run count in rendering its oral decision. However, the record makes clear that the trial court's analysis resolved Lassiter's motion to strike the felony failure to appear count.

- 5 -

established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### A. *Felony Hit and Run*

In his first assignment of error, Lassiter argues that the trial court erred in convicting him of felony hit and run because the evidence was insufficient to prove that he reasonably knew or should have known that Goodman suffered an injury because of the accident.

Code § 46.2-894 provides that

> [t]he driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, [and] to the person struck and injured if such person appears to be capable of understanding and retaining the information . . . .

"[T]he Commonwealth must prove that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case." *Kil v. Commonwealth*, 12 Va. App. 802, 811 (1991). "[K]nowledge of injury may be imputed to a driver 'where the fact of personal injury is visible or where the seriousness of the collision would lead a reasonable person to

assume there must have been resulting injuries.'" *Brannon v. Commonwealth*, 52 Va. App. 800, 804 (2008) (quoting *Neel v. Commonwealth*, 49 Va. App. 389, 395 (2007)).

Lassiter does not dispute that he had actual knowledge of the accident. He contests only whether the evidence was sufficient to support a conclusion that he knew or should have known that he injured Goodman.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to allow a rational fact finder to conclude that Lassiter knew or should have known that he injured Goodman. The impact of the crash had such force that Goodman was pushed into the cross street, and she had to accelerate and turn her wheel to avoid being pushed into a street sign. Photographic evidence and trial testimony confirmed that Goodman's car sustained visible damage, and it could not be driven from the scene. *See id*. at 806 (noting "that the quantum of the impact and damage may allow a proper inference that a reasonable person would assume there must be injuries"). Although the dissent describes the damage to Goodman's car as minimal, Lassiter's car was heavily damaged. Lassiter knew of the extent of the damage to his car, evidenced by the fact he abandoned it at the scene of the collision. *See Neel*, 49 Va. App. at 397 (minimal damage insufficient to put driver on notice where no evidence that he "would have known about this damage before he fled the scene"). The damage to his car is also relevant to the quantum of the impact.

Lassiter was plainly aware the collision was significant enough that it could cause injuries, as demonstrated by the fact that he checked on Goodman's well-being before leaving the scene.[5] Moreover, Lassiter informed the detective that the force of the impact caused injuries

---

[5] We acknowledge that Lassiter did ask about Goodman's well-being. But her answer was not an affirmative statement that she was all right or uninjured. Rather, she was equivocal in her response, stating only "I think so" when asked if she was okay.

to his head, further supporting a conclusion that a reasonable person should have known that Goodman likely also sustained injuries.[6] Thus, the evidence was sufficient to support a finding that Lassiter knew or should have known Goodman may be injured.

Lassiter argues that his case is similar to *Brannon*, in which this Court found that the evidence was insufficient to support a conviction for felony hit and run.[7] In *Brannon*, however, the victim of the collision actually "got out of the car, walked over to appellant's truck and inquired about his well-being," allowing the appellant to observe whether the victim "limped or exhibited any distress." 52 Va. App. at 806. Unlike the victim in *Brannon*, Goodman did not get out of her car and walk in Lassiter's presence such that he could have observed her condition. Rather, Goodman remained in her car during her brief interaction with Lassiter. Thus, while he may not have observed visible injuries, his limited observation is not comparable to the opportunity the appellant in *Brannon* had to observe the victim of the accident. Thus, his limited observation, combined with Goodman's equivocal response, are not sufficient to mitigate against an inference made from the quantum of the impact. *Brannon* therefore does not support

---

[6] The dissent states that "Mr. Lassiter did not perceive that he had been injured himself, although he eventually developed 'a couple lumps' on his head." Lassiter's statement to the detective was "no, but he had a couple lumps." There is nothing in the record indicating that he subsequently or "eventually developed" these injuries. In fact, Lassiter's statement was inconsistent—he said he was not injured in the accident but then proceeded to describe injuries. Viewing the facts and inferences in the light most favorable to the Commonwealth as we must as the Commonwealth was the prevailing party below (rather than in the light most favorable to the appellant, as the dissent does), it is reasonable to infer that he was aware of his injuries at the time he left the scene.

[7] Lassiter also argues that Goodman did not disclose any injuries to the detective and did not seek medical treatment until the next day. The standard, however, is what Lassiter "knew or should have known" *at the time he left the scene of the collision. Neel*, 49 Va. App. at 397. While that information may be relevant to the visibility or severity of Goodman's injuries, it is not conclusive evidence of what Lassiter knew or should have known at the time he left the scene. Nor is it sufficient to overcome the evidence in the record that supports the conclusion that he knew or should have known that Goodman was likely injured.

Lassiter's argument. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Lassiter was guilty of felony hit and run. Accordingly, the trial court did not err in convicting him on that charge.

## B. *Failure to Appear*

In his second assignment of error, Lassiter challenges his failure to appear conviction by arguing there is insufficient evidence to prove that his failure to appear was "willful."

To convict a defendant for felony failure to appear, the Commonwealth is required to prove that he "willfully fail[ed] to appear." Code § 19.2-128(B). "'Willfully,' as used in Code § 19.2-128(B), . . . mean[s] that the act must have been done 'purposely, intentionally, or designedly.'" *Chavez*, 69 Va. App. at 162 (quoting *Williams v. Commonwealth*, 57 Va. App. 750, 763 (2011)).

"[A]ny failure to appear after notice of an appearance date is *prima facie* evidence that the failure to appear was willful." *Id.* Where the Commonwealth "proves that [a defendant] received timely notice of when and where to appear for trial and thereafter does not appear on the date or [at the] place specified, the fact finder may infer that the failure to appear was willful." *Id.* (alterations in original) (quoting *Hunter v. Commonwealth*, 15 Va. App. 717, 721 (1993) (*en banc*)). When a defendant receives notice of an original appearance date, that defendant "is charged with notice of those dates to which his or her case is expressly continued when such action is duly recorded in the order of the court." *Id.* (quoting *Hunter*, 15 Va. App. at 722). Additionally, if

> "the [defendant's] attorney had actual notice of the . . . [court] date, the fact finder may infer from that evidence that the [defendant] also had actual notice of the [court] date," because the "attorney-client relationship presumes that attorney and client, as

> servant and master, will communicate about all the important
> stages of the client's upcoming [court proceedings]."

*Id.* at 162-63 (alterations in original) (quoting *Hunter*, 15 Va. App. at 722).

Lassiter does not contest that he did not appear at the June 2019 hearing. He argues only that there is insufficient evidence to show that he had notice to appear, and therefore his failure to appear was not willful. He asserts that the Commonwealth did not present "testimony, physical evidence, stipulation, or seek[] judicial notice" to prove that he had notice of the hearing. Lassiter specifically emphasizes that the Commonwealth never asked the trial court to "take judicial notice of any particular facts in its record."

Lassiter's argument fails because "[t]he taking of judicial notice is generally within the discretion of the trial court." *Williams v. Commonwealth*, 289 Va. 326, 332 (2015) (quoting *Ryan v. Commonwealth*, 219 Va. 439, 446 (1978)). While a

> trial court need not intone the words "judicial notice" in order to
> notice a fact, the evidence, the arguments of the parties *and* the
> *statements of the trial court must demonstrate clearly* that the trial
> court has taken judicial notice of the fact before a party may rely
> upon such notice on appeal.

*Id.* at 333-34 (quoting *Edmonds v. Commonwealth*, 43 Va. App. 197, 201 (2004)).

Although the trial court did not use the words "judicial notice," it is plain from its statements that it took judicial notice of certain documents in the record. By referring to the "official record of the proceedings" and the court's "official record," the trial court clearly indicated that it had taken judicial notice of the relevant documents in the record.

The trial court's statements indicate it took judicial notice that the document regarding Lassiter's pretrial release conditions, signed by Lassiter, established that he had notice of the original May 1, 2019 hearing. These records state that Lassiter was required to be present at the hearing as a condition of his bond. Although the hearing was continued to June 4, 2019, Lassiter

had notice of the original hearing date and is charged "with notice of those dates to which his . . . case is expressly continued when such action is duly recorded in the order of the court." *Chavez*, 69 Va. App. at 162 (quoting *Hunter*, 15 Va. App. at 722). The court record shows that the case was expressly continued until June 4, 2019, *upon Lassiter's own motion*. Thus, Lassiter had notice of the June 2019 hearing.

Moreover, the record demonstrates that Lassiter's attorney had notice of the June 4, 2019 hearing, as the date was set upon his motion for a continuance. Given the attorney-client relationship, the trial court was permitted to infer from that fact that Lassiter also had actual notice of the June 4, 2019 hearing date. *See id.* at 162-63. Thus, as the trial court stated, there "was ample Constitutional notice of the requirement that he was to appear in court on that date."

Lassiter cites *Williams*, 289 Va. at 335, in challenging the trial court's judicial notice of the documents that established that he had notice of the hearing because the trial court's "references occurred after the presentation of evidence had concluded," depriving him of "an opportunity to be heard on the propriety of taking judicial notice of these pieces of evidence." Quoting *Williams*, Lassiter asserts that "[b]y failing to indicate that it is taking judicial notice, the trial court deprived [him] of the 'opportunity to object to the trial court's action or dispute the accuracy of any "facts" noticed prior to the trial court's ruling on his motion.'"

Lassiter's argument is meritless, as Virginia Rule of Evidence 2:201(b) permits a court to take judicial notice of a factual matter "at any stage of the proceeding." By explicitly referring to the "official record of the proceedings" and the court's "official record," the trial court conveyed to the parties that it had taken judicial notice of the relevant documents in the record. Furthermore, the trial court explicitly asked Lassiter if he wanted "to address that record information." Lassiter only argued that the Commonwealth did not ask the court to take judicial notice but did not otherwise challenge the accuracy of the record.

- 11 -

The record reflects that Lassiter did not appear in court on June 4, 2019, both in the documents in the record and in the testimony of Goodman. The trial court's statements establish that it took judicial notice of the records that demonstrate Lassiter had notice to appear but failed to do so, and, combined with Goodman's testimony, the record contains sufficient evidence that Lassiter's failure to appear at his June 2019 hearing was willful. Therefore, we find no error in the trial court's denial of Lassiter's motions to strike.

## CONCLUSION

For the foregoing reasons, we affirm Lassiter's convictions.

*Affirmed.*

Chaney, J., concurring in part and dissenting in part.

I concur in the Court's judgment affirming Mr. Lassiter's conviction for failure to appear in court, in violation of Code § 19.2-128(B). However, I respectfully dissent from the majority's judgment affirming Mr. Lassiter's conviction for feloniously leaving the scene of an accident involving personal injury, in violation of Code § 46.2-894. Because the evidence is insufficient to prove that Mr. Lassiter knew or should have known that the accident involved personal injury, I would reverse Mr. Lassiter's conviction for felony hit and run.

The undisputed evidence established that a few minutes after Mr. Lassiter's car hit the rear bumper of Ms. Goodman's SUV,[8] Mr. Lassiter "ran over from across the street . . . and came over" to Ms. Goodman's car to personally investigate whether the accident caused personal injury. Mr. Lassiter did not perceive that he had been injured himself, although he eventually developed "a couple lumps" on his head.[9] Ms. Goodman was the only person in her vehicle. She was on a "hands-free" call with 911 when Mr. Lassiter approached her. Mr. Lassiter's close-up view of Ms. Goodman's SUV would have informed him that the visible damage to her vehicle was minimal, as documented in the Commonwealth's photographic exhibits.[10] When Ms. Goodman rolled down her window, Mr. Lassiter asked her if she was okay, and she replied,

---

[8] Mr. Lassiter admitted to Detective David Nolff that the accident occurred when he dropped a water bottle and reached to pick it up from the car floorboard.

[9] Detective Nolff "asked [Mr. Lassiter] if he had been injured in the accident. He stated no, but he had a couple lumps[ ] . . . [on] his head."

[10] Ms. Goodman testified that when she attempted to drive home after the accident, she realized that the muffler on the underside of her vehicle was hanging and hitting the ground. This was the only damage that prevented Ms. Goodman from driving away from the scene of the accident.

"I think so."[11]  Ms. Goodman did not ask Mr. Lassiter for any assistance, nor did she appear to be injured.  According to Ms. Goodman's own testimony, she had no cuts, no bruises, and no apparent injuries.  Ms. Goodman did not request an ambulance when she called 911 to report the accident, and she did not request any medical assistance when the police arrived.  Moreover, Ms. Goodman testified that "I started hurting that I didn't expect[ ]" on the day after the accident.  Subsequently, Ms. Goodman received medical treatment for her injured lower left hip and some pain in her leg and back.  She was treated with pain medications, muscle relaxers, and physical therapy for a muscle in her hip.

Where, as here,

1) the defendant left his car and ran across the street to check on the well-being of the other driver involved in the accident;

2) the defendant did not perceive that he had any injuries himself;

3) the defendant had the opportunity to observe that the visible damage to the other driver's car was minimal;

4) the defendant had a face-to-face encounter with the other driver;

5) the other driver had initiated a 911 call when the defendant encountered her;

6) the other driver "rolled down" her car window to speak with the defendant;

7) the other driver had no apparent injuries;

8) the other driver did not request any medical attention;

9) the other driver informed the defendant that she thought she was okay; and

10) the other driver had no expectation that she would eventually feel pain related to the accident,

---

[11] Ms. Goodman testified that in the first few minutes after the accident, "a couple of people came.  Like, drove past, and kind of made eye contact to see if I was okay."

the evidence does not support a finding that a reasonable person in the defendant's circumstances knew or should have known that the other person in the accident was injured. One cannot reasonably impute knowledge of Ms. Goodman's non-apparent injury to Mr. Lassiter at a time when Ms. Goodman herself perceived that she was not hurt, and informed Mr. Lassiter of her perception.

If, hypothetically, Mr. Lassiter had remained at the scene of the accident, there was nothing more that he would have been required to do to comply with the statutory mandate to "render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person." Code § 46.2-894. Given Mr. Lassiter's compliance with this requirement of the felony hit and run statute, the evidence does not support a finding that he feloniously left the scene of the accident under circumstances where a reasonable person would have known that he was leaving behind an injured person that he was required to assist.

This Court has recognized that "the quantum of the impact and damage may allow a proper inference that a reasonable person would assume there must be injuries [involved in a motor vehicle accident]." *Brannon v. Commonwealth*, 52 Va. App. 800, 806 (2008). However, here, as in *Brannon*, "the subsequent facts militate against such an inference." *Id*. In *Brannon*, as here, a rear-end vehicle collision caused minimal damage to the victim's vehicle compared to heavy damage to the defendant's vehicle. *Id.* at 801-02. In *Brannon*, the defendant left the scene of the accident after the other driver "walked over to [the defendant's] truck and inquired about his well-being." *Id*. at 806. There was no evidence that the other driver limped or exhibited any distress, and the other driver testified that she had no visible injuries. *Id*. This Court held that

- 15 -

under these circumstances, the evidence was insufficient to support the defendant's felony conviction for leaving the scene of an accident involving personal injury. *Id*.

The majority contends that *Brannon* lends no support to Mr. Lassiter's case because "[u]nlike the victim in *Brannon*, Goodman did not get out of her car and walk in Lassiter's presence such that he could have observed her condition. Rather, Goodman remained in her car during her brief interaction with Lassiter." The majority's analysis misinterprets the holding in *Brannon*, which is not as limited as the majority contends. *Brannon* held that the evidence was insufficient to support an inference that the appellant should have known that the accident involved personal injury "because appellant had the opportunity to observe [the other driver], who exhibited no visible signs of injury." *Id*. (citing *Neel v. Commonwealth*, 49 Va. App. 389 (2007)). Here, Mr. Lassiter had the opportunity to observe Ms. Goodman, who exhibited no visible signs of injury. Moreover, in contrast with the defendant in *Brannon* whose opportunity to observe the victim was due to the victim's efforts to check on the defendant's well-being, Mr. Lassiter exerted effort to observe and speak with Ms. Goodman to ascertain whether she was injured. If we are to construe and apply Code § 46.2-894 in accordance with the General Assembly's intent to punish as felonious a driver's failure to stop and help injured accident victims,[12] we cannot reasonably conclude that Mr. Lassiter's state of mind was felonious under Code § 46.2-894 when the state of mind of the defendant in *Brannon* was not. Because Ms. Goodman had no apparent injuries and told Mr. Lassiter that she thought she was "okay," the evidence failed to prove that Mr. Lassiter should have known that Ms. Goodman was injured.

---

[12] "The purpose of Code § 46.2-894 is to protect persons injured as the result of, and to ensure the assessment of liability arising out of, an unfortunate vehicular event. The statute's primary beneficiary is the injured victim, and it makes no difference whether the collision was intentional or unintentional." *Milazzo v. Commonwealth*, 276 Va. 734, 738 (2008).

The majority also contends that "Lassiter informed the detective that the force of the impact caused injuries to his head, further supporting a conclusion that a reasonable person should have known that Goodman likely also sustained injuries." The record does not support this contention. When Detective Nolff interviewed Mr. Lassiter a few weeks after the accident, he "asked [Mr. Lassiter] if he had been injured in the accident. *He stated no*, but he had a couple lumps[ ] . . . [on] his head." (Emphasis added). Mr. Lassiter's statement to the detective indicates that Mr. Lassiter did not perceive that he had been injured when he left the scene of the accident, although he eventually noticed a couple lumps on his head. This evidence does not support an inference that Mr. Lassiter knew that he had been injured at the time he left the scene of the accident. Additionally, assuming *arguendo* that Mr. Lassiter was aware that he had been injured before he left the scene of the accident, a rational fact-finder could not reasonably infer from this that Mr. Lassiter should have known that Ms. Goodman was injured because "the subsequent facts militate against such an inference." *See Brannon*, 52 Va. App. at 806. Upon personally observing that Ms. Goodman had no apparent injuries and upon hearing Ms. Goodman state that she thought she was okay, a reasonable person in Mr. Lassiter's position would not have reason to know that Ms. Goodman was injured, even if he was injured himself.

Because the undisputed evidence does not support a finding that Mr. Lassiter knew or should have known that the accident involved personal injury, I would reverse his felony conviction for leaving the scene of an accident involving personal injury. Because the evidence sufficiently establishes the elements of the lesser-included offense of misdemeanor hit and run under Code § 46.2-894, I would remand this matter for retrial on the misdemeanor charge if the Commonwealth be so advised. *See Crowder v. Commonwealth*, 41 Va. App. 658, 666 (2003) ("When an appellant successfully challenges the sufficiency of the evidence on some (but not all) aspects of his conviction, . . . [and] the proven elements of the original charge qualify as a

lesser-included offense[,] . . . the appropriate remedy on appeal is a reversal of the conviction on the greater charge and a remand of the lesser charge for retrial—assuming the Commonwealth, in its prosecutorial discretion, chooses to go forward on the lesser charge." (citing *Gorham v. Commonwealth*, 15 Va. App. 673, 678 (1993) (observing that the "consistent practice in Virginia, when the evidence is found insufficient to sustain a felony conviction on appeal, but sufficient to sustain a conviction on a lesser-included misdemeanor offense, has been to remand the case for retrial on the lesser-included offense"))).

For the foregoing reasons, I respectfully dissent.